# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William J. Church,                              :
                Petitioner            :
                                            :
         v.                         :    No. 1068 C.D. 2015
                                            :    Submitted: December 24, 2015
Workers' Compensation Appeal               :
Board (Wayne Cook t/a Cook                  :
Landscaping and Fleming Termite and        :
Pest Control),                               :
              Respondents          :

BEFORE:    HONORABLE DAN PELLEGRINI, President Judge[1]
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED: March 18, 2016**

       William J. Church (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision and order of the Workers' Compensation Judge[2] (WCJ) denying his petition, filed in 2011, to reinstate his temporary total disability benefits under the Workers' Compensation Act (the Act)[3] (Reinstatement Petition) and an amendment of that petition in 2012, to include a request for penalties (Penalty Petition). We affirm.

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] The Reinstatement Petition and the Joinder Petition that followed were originally assigned to WCJ Thomas Hines on August 12, 2011; following Judge Hines' retirement, the Petitions were reassigned to WCJ Kelly F. Melcher.

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.
**(Footnote continued on next page…)**

On July 29, 2004, Claimant sustained a work-related injury in the nature of a L5-S1 herniated disk while employed by Wayne Cook t/a Cook Landscaping (Employer). (WCJ Decision.) On August 10, 2004, Employer issued a Notice of Temporary Compensation Payable (1st NTCP) for that injury describing it as a "herniated disc;" the notice was dated August 10, 2004, indicated an average weekly wage of $973.81 and a compensation rate of $649.21, and was stamped as received by the Bureau of Workers' Compensation (Bureau) on August 11, 2004. (Board Decision at 1; Claimant Ex. C-1.) Employer issued a second Notice of Temporary Compensation Payable (2nd NTCP), also dated August 10, 2004, which was clearly marked "CORRECTED;" the amended notice described the same injury, but indicated a different average weekly wage of $486.90 and a different compensation rate of $345, and was stamped as received by the Bureau on August 18, 2004. (*Id*.) Following payment of benefits to Claimant for approximately 10 weeks, on October 11, 2004 Claimant returned to work and on that same date, Employer filed a Notice Stopping Temporary Compensation (NSTC) and a Notice of Workers' Compensation Denial (NCD), indicating that, although an injury took place, Claimant was not disabled as a result of the injury and further indicating that all medical treatment related to the work injury of July 29, 2004 would be reviewed for payment. (*Id*.)

On August 8, 2011, Claimant filed a Reinstatement Petition alleging that, as of October 11, 2004, his condition had worsened and his injury was causing decreased earning power. (Reinstatement Petition; WCJ Decision at 1.) At a May 14, 2013 hearing on the Reinstatement Petition, Claimant's counsel

---

**(continued…)**

2

clarified that the date from which Claimant was seeking reinstatement was August 5, 2010. (May 14, 2013 Hearing Transcript at 33.) The Reinstatement Petition indicated that compensation had been paid to Claimant at a weekly rate of $345 with an average weekly wage of $486.90. (Reinstatement Petition.) In its Answer to the Reinstatement Petition, Employer alleged that it was barred by the applicable statute of limitations and was procedurally improper; however, on December 7, 2011, WCJ Hines, the WCJ to which the case was originally assigned, denied Employer's Motion to Dismiss and listed the matter for Claimant's medical evidence. (Interlocutory Order of WCJ Hines.) On December 22, 2011, Employer filed a Joinder Petition, alleging that Fleming Termite and Pest Control (Fleming) was the employer liable for benefits. (Petition for Joinder of Additional Defendant; WCJ Decision at 1.) The Reinstatement Petition and the Joinder Petition were consolidated for litigation.

The WCJ held an evidentiary hearing on September 1, 2011 at which Claimant testified. Claimant subsequently presented the May 8, 2012 deposition testimony of Dr. Bruce Menkowitz, a board certified orthopedic surgeon who treated Claimant beginning on August 30, 2011. Claimant amended the Reinstatement Petition to include the Penalty Petition on the ground that the 1st NTCP was not properly withdrawn at the time the 2nd NTCP was issued.[4] At a hearing held on May 14, 2013, Employer presented the testimony of Wayne Cook, Employer's owner and sole proprietor, and Claimant testified in rebuttal; Employer

---

[4] The WCJ noted in her decision that Claimant's amendment to the Reinstatement Petition to include a Penalty Petition occurred during a hearing held on May 22, 2012; however, notes of testimony from that hearing are not included as part of the certified record.

3

also presented the deposition testimony of Dr. Richard Mandel, a board certified orthopedic surgeon who examined Claimant on April 16, 2012.

At the September 1, 2011 hearing, Claimant testified that he worked off and on at Employer from 1996 or 1997 until July 29, 2004 as a foreman, with job responsibilities including driving, operating machinery, lifting and moving debris, and planting shrubs. (September 1, 2011 Hearing Transcript (9/1/11 H.T.) at 11.) He stated that on July 29, 2004, while unloading equipment, he lifted up a lawnmower from the back of a truck and as he twisted to set it down, he felt pain in his back. (*Id*. at 12.) Claimant stated that within a day or two, he stopped working and sought treatment at Business Health and later at NovaCare, for rehabilitation. (*Id*. at 11-12.) After receiving weekly workers' compensation benefits for approximately two and a half months, Claimant testified, he was eager to return to work and did so on October 11, 2004, although he had pain in his lower back and initially "took it real easy" and performed lighter duties; however, he did not receive any medical treatment after he returned to work. (*Id.* at 14-15.) Claimant testified that he had no medical insurance, and stated that he related his back pain to Cook, who was his supervisor, after his return to work and more often as time went on, but he was never referred to a physician by Employer and Claimant believed that his case was closed. (*Id*. at 15-16.) Claimant testified that he continued to work at Employer until mid-2008, when he could no longer perform his job because of his back pain.[5] (*Id*. at 17.) Claimant stated that shortly

---

[5] Cook testified that Claimant never advised him that he would not be returning to work after May 31, 2008. (May 14, 2013 Hearing Transcript at 17.) Cook stated that after Claimant was injured, and following his return to work, he resumed his regular job. (*Id*.) Claimant testified in rebuttal that he complained to Cook on several occasions about his back, but felt that he was not being taken seriously, and that is why he left his employment; he conceded that he had not given Cook any notice that he was leaving. (*Id*. at 25.)

after he left Employer, he attempted to start a scrap metal business, but the business was a failure and ended within one month. (*Id.* at 21.) He stated that he worked again in Spring 2009 as an exterminator at Fleming Pest Control, but remained on the job for less than 90 days, because his worsening lower back pain made it difficult to do the required chemical spraying work in crawl spaces. (*Id.* at 19-20.) In August 2010, Claimant testified, he obtained medical insurance through a welfare program, and began treatment with a physician, Dr. Cipriano; Claimant stated that he commenced physical therapy, and has recently received treatment from Dr. Menkowitz. (*Id.* at 22.) On cross-examination, Claimant allowed that a Business Health form dated October 8, 2004 indicated that he had no pain or discomfort and no sciatica, and further indicated that he had been discharged to full duty work on that date, and returned to his regular job, with his regular rate of pay. (*Id.* at 32.)

Dr. Mandel opined, within a reasonable degree of medical certainty, that on the date of the work injury, Claimant sustained a central disc herniation at L5-S1 and that the disk herniation had resolved as of April 16, 2012, the date of his examination. (Employer Ex. D-1, Mandel Dep. at 38, 88.) He was in agreement with the diagnosis of the radiologist who read Claimant's 2012 MRI, who indicated in his report that there was no herniation but rather a protrusion; Dr. Mandel opined that the 2012 MRI showed degenerative changes at multiple levels in the lumbar spine including the L5-S1 level, where there was also a central disk bulge or protrusion, but no residual herniation. (*Id.* at 34, 38.) He testified further that Claimant had degenerative disease at multiple levels, at L3 all the way through S1, and stated that this was documented in the MRI that was done on August 4, 2004. (*Id.* at 89.) Dr. Mandel opined that based upon his clinical examination,

5

Claimant did not exhibit any findings indicative of radiculopathy and/or disk herniation at any level, including L5-S1, and exhibited no objective abnormalities at all, with no muscle spasm, no true restriction of motion, a negative straight leg raising test and a negative sitting root test, no flattening of lumbar lordosis, no loss of reflexes, and no atrophy. (*Id*. at 38-39.) He opined that during the examination, Claimant exhibited multiple signs of embellishment or symptom magnification. (*Id*. at 22-25, 27-28, 45.) He testified that a lumbar MRI completed on August 4, 2004 following the injury described a central herniation at L5-S1 superimposed upon degenerative disk disease, with no root compression or dural compression, which he stated was significant because it suggested that no radiculopathy would occur in association with the herniation. (*Id*. at 29.)

Dr. Mandel noted that another orthopedist, Dr. Steven Valentino, saw Claimant at the end of September, 2004, and diagnosed a central herniation with no nerve root compression and reported an intact neurologic exam; he stated that Dr. Valentino's impression was of resolving lumbar strain and resolving aggravation of lumbar degenerative disk disease with a central herniation at L5-S1. (*Id*. at 30.) Dr. Mandel testified that he reviewed lumbar radiographs from Montgomery Hospital from August 30, 2010 that reported no acute changes, degenerative disk disease at L5-S1, and a probable old avulsion fracture from the anterior aspect of L4. (*Id*. at 31.) Dr. Mandel opined that, within a reasonable degree of medical certainty, at least as of the date of his examination, Claimant was fully recovered from his work injury and was able to return to his usual employment as a foreman and to those duties he described as having performed at Employer without restrictions or limitations. (*Id*. at 46.)

6

Dr. Menkowitz testified that he examined Claimant for the first time on August 30, 2011; at that time, he noted tenderness in the paraspinal muscles, and a reproduction of back pain with straight leg raising, lasegue, and sitting root tests; he reported that the remainder of the neurovascular examination was within normal limits. (Claimant Exhibit C-4, Menkowitz Dep. at 11.) Based on his examination and a review of Claimant's diagnostic studies, Dr. Menkowitz opined that Claimant had debilitating spinal disease post-injury with disc herniation at L5-S1 and an L4 vertebral fracture, and was not capable of working. (*Id*. at 13.) Dr. Menkowitz testified that he advised Claimant to obtain an MRI and bone scan, but Claimant did not undergo these studies until April 2012. (*Id*. at 14, 16.) Upon review of the MRI and bone scan, Dr. Menkowitz opined that the 2012 MRI revealed a worsening from the August 2004 MRI because Claimant had a reduction in disc height along with instability and retrolisthesis; he opined that the 2012 bone scan revealed evidence of degenerative changes of the lower lumbar spine consistent with the MRI findings. (*Id*. at 18-19.) Dr. Menkowitz opined, within a reasonable degree of medical certainty, that Claimant was unable to perform any type of gainful employment since August 5, 2010. (*Id*. at 25.)

Dr. Menkowitz further testified as to his reasons for disagreeing with Dr. Mandel's opinion that Claimant was fully recovered from his work injury, stating that Claimant has not recovered but rather the degenerative changes at the L5-S1 level have been accelerated; Dr. Menkowitz opined that the disc function has failed and as such there is instability at the L5-S1 level leading to injuries to motion. (*Id*. at 27.) On cross-examination, Dr. Menkowitz conceded that the August 4, 2004 MRI findings revealed degenerative changes that pre-dated Claimant's July 2004 work injury, and that degenerative disc disease and

7

degenerative disc space narrowing, without any trauma, can cause protrusion and herniation of lumbar discs. (*Id.* at 35.) Dr. Menkowitz further conceded that degenerative disease is progressive, even in the absence of trauma, and that the MRI report from April 2012 indicates no significant interval change as compared to the August 2004 MRI. (*Id.* at 36, 39.)

On October 30, 2013, the WCJ issued a decision dismissing Claimant's Reinstatement Petition, Penalty Petition, and claim for counsel fees for unreasonable contest; the WCJ also dismissed Employer's Joinder Petition and its request for termination.[6] (WCJ Decision.) The WCJ found, *inter alia*, that:

> Based on a review of the evidence as a whole, this Judge finds the testimony of Claimant neither credible nor persuasive as it pertains to his inability to work due to his work injury. This determination is based, in large part, on this Judge's personal observation of Claimant's affect and demeanor during his live testimony. Furthermore, Claimant did not seek medical treatment from the time he returned to work without restrictions in October 2004 until more than two years after he stopped working for Employer. He did not even seek any treatment when he alleges he had an increase in symptoms while working for Fleming Pest Control.

(WCJ Decision, Findings of Fact (F.F.) ¶17.) The WCJ found the testimony of Dr. Menkowitz neither credible nor persuasive as it pertained to Claimant's inability to work due to his work injury; she noted that Dr. Menkowitz ignored the fact that Claimant had returned to full duty work for approximately a year and a half after

---

[6] Employer noted during the May 14, 2013 hearing that it had moved, during the 2012 deposition of Dr. Mandel, and based upon the deposition of Dr. Mandel, to have its Answer to the Reinstatement Petition considered to be a Petition to Terminate compensation as of April 16, 2012 as a result of Claimant's full recovery from his work-related injury, and that none of the parties objected thereto. (May 14, 2013 H.T. at 8; Mandel Dep. at 55.)

8

being released to full duty work by his treating physicians. (*Id*., F.F. ¶18.) The WCJ also found significant Dr. Menkowitz' testimony that the 2012 MRI revealed no significant interval change as compared to Claimant's 2004 MRI. (*Id*.)

The WCJ found, based upon a review of the evidence as a whole, that the opinion of Dr. Mandel was more credible than that of Dr. Menkowitz, in part. (*Id*., F.F. ¶19.) She accepted Dr. Mandel's opinion that Claimant's work injury has not caused Claimant's inability to work, and found that the objective diagnostic studies support this opinion. (*Id*.) However, the WCJ rejected Dr. Mandel's opinion that Claimant's work with Fleming caused an aggravation or new injury, noting that Claimant had only testified that his work at Fleming caused increased symptoms, but Claimant had also indicated increased symptoms while working for Employer, and Claimant was not particularly credible. (*Id*.) The WCJ further rejected Dr. Mandel's opinion that Claimant has fully recovered from his work injury, noting Dr. Mandel's concession that although the herniation had disappeared, Claimant continued to have a protrusion or bulge. (*Id*.)

The WCJ concluded that Claimant failed to meet his burden of proof with regard to the Reinstatement and Penalty Petitions, stating that Claimant was not entitled to temporary total disability benefits, and thus there is nothing upon which to base a penalty. (*Id*., F.F. ¶20.) The WCJ further concluded that Employer failed to prove that Claimant is fully recovered, and failed to meet its burden of proof in connection with the Joinder Petition; however, she concluded that Employer presented a reasonable contest. (WCJ Decision, Conclusions of Law.)

9

Claimant appealed, and Employer cross-appealed. On June 2, 2015, the Board affirmed the WCJ Decision. This appeal followed.[7]

As an initial matter, we reject Claimant's first argument, that the 1st NTCP, which provided for a higher weekly wage and compensation rate, is in effect a separate Notice of Temporary Compensation Payable (NTCP) that should be deemed to have converted to a Notice of Compensation Payable (NCP), and therefore requires the continuation of payments thereunder. Claimant argues that in order to properly amend the 1st NTCP, Employer was required to file a Notice Stopping Temporary Compensation (NSTC), followed by the issuance of a new NTCP at the corrected compensation rate. As noted by the Board, there is simply no provision in the Act or the Regulations promulgated thereunder to support this contention.

Section 406.1(a) of the Act, added by the Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. §717.1(a), delineates the manner in which an employer may compensate an injured employee, pursuant to either: (i) an agreement upon the compensation payable, (ii) a NCP, or (iii) a NTCP. Agreements upon compensation payable and NCPs are specifically provided for in Section 407, 77 P.S. §731. Subsection 406.1(b) of the Act, 77 P.S. §717.1(b) establishes that payments of compensation pursuant to agreements or pursuant to NCPs may be suspended, terminated, reduced or otherwise modified by petition and subject to right of hearing as provided in Section 413, 77 P.S. §§771-774.1.

---

[7] Our review is limited to determining whether an error of law was committed, whether the WCJ's necessary findings of fact are supported by substantial evidence or whether Board procedures or constitutional rights were violated. *Anderson v. Workers' Compensation Appeal Board (Penn Center for Rehab)*, 15 A.3d 944, 947 n.1 (Pa. Cmwlth. 2010).

10

Sections 406.1(d)(1)-(6) of the Act address NTCPs; they are to be employed in situations like the one *sub judice*, where an employer is uncertain whether a claim is compensable under the Act or is uncertain of the extent of its liability under the Act; in either case, an employer may initiate compensation payments without prejudice and without admitting liability, pursuant to a NTCP as prescribed by the Department of Labor & Industry (Department). Pursuant to Subsections 406.1(d)(2)(i)-(iii) of the Act, a NTCP shall be sent to the claimant, which notice shall inform the claimant: (i) that payment does not mean the claimant's employer is accepting responsibility for the injury or *that a compensation claim has been filed or commenced*; (ii) that the claimant is entitled to payment for up to ninety (90) days; and (iii) that in order to ensure continuation of compensation payments, the claimant "may need to file a claim petition in a timely fashion under section 315, enter into an agreement with his employer or receive a notice of compensation payable …." 77 P.S. §717.1(d)(2)(i)-(iii). Subsection 406.1(d)(5)(i) provides that "if the employer *ceases* making payments pursuant to a notice of temporary compensation payable, a notice in the form prescribed by the department shall be sent to the claimant and a copy filed with the department…." 77 P.S. §717.1(d)(5)(i). Subsection 406.1(d)(5)(ii) provides that this notice, *inter alia*, shall notify the employee that he must now file a claim to establish the liability of the employer. 77 P.S. §717.1(d)(5)(ii). Finally, subsection 406.1(d)(6) provides that if the employer fails to file such notice that the temporary compensation has been stopped within the ninety-day period during which the temporary compensation is payable, the employer shall be deemed to have admitted liability and the NTCP shall be converted to a NCP. 77 P.S. §717.1(d)(6).

The regulations promulgated by the Bureau similarly distinguish between NCPs and NTCPs, establishing notice filing procedures to be followed by the employer, and requiring that a Statement of Wages be filed together with the respective notices.[8] Bureau Regulation Section 121.7a, 34 Pa. Code §121.7a, which deals specifically with NTCPs, provides for the modification of a NTCP at subsection 121.7a(c), 34 Pa. Code §121.7a(c), and directs the employer who modifies the NTCP to file an amended NTCP form, to be clearly identified as "amended;" this amended form need only contain the insurer's signature and does not require the signature of the employee. When an amended NTCP is filed, the employer must also file a new Statement of Wages. 34 Pa. Code 121.7a(c)(1). Significantly, subsection 121.7a(c)(2) makes clear that the subsection dealing with modification does not apply upon the conversion of a NTCP to a NCP. 34 Pa. Code §121.7 a(c)(2).

Bureau Regulation Section 121.7, 34 Pa. Code §121.7, deals specifically with NCPs, and provides a mechanism whereby an employer may file a NCP based upon the employee's *estimated* wages or compensation if the employer has not obtained the wages necessary to properly calculate the employee's compensation payable; the regulation provides that the NCP may be amended upon receipt of the employee's actual wages; however, when such amendment results in a decrease in the employee's wage or compensation, the employer is required to file a Supplemental Agreement for Compensation for

---

[8] Employer states that it filed a Statement of Wages together with the 1st NTCP that was received by the Bureau on August 11, 2004, and filed a corrected Statement of Wages together with the 2nd NTCP, which was received by the Bureau on August 18, 2004. These Statements of Wages are not included in the certified record; however, the WCJ indicated that they were in her possession during the May 14, 2013 hearing. (May 14, 2013 H.T. at 20-21.)

Disability or Permanent Injury; similarly, Bureau Regulation Section 121.12 specifically addresses the correction of errors in computing wages in a compensation agreement or NCP, and also directs that in instances where changes result in a decrease in the employee's wage or compensation, the employer shall file the Supplemental Agreement for Compensation for Disability or Permanent Injury form. 34 Pa. Code §121.12.

Finally, Bureau Regulation Section 121.17 addresses changes in compensation, and with respect to the *stopping* of temporary compensation under a NTCP, directs that an employer who ceases such temporary payments must file either: (i) a NSTC, together with a Notice of Workers' Compensation Denial (NCD), within a prescribed time frame; or (ii) a NCP; or (iii) an Agreement for Compensation for Disability or Permanent Injury. 34 Pa. Code §121.17.

Here, up until the time Claimant returned to work, Employer did not cease making temporary compensation payments, but rather made a correction to the 1st NTCP and filed the 2nd NTCP, together with filing a replacement Wage Statement, pursuant to the requirements set forth in Sections 121.7a(c) and 121.7a(c)(1), 34 Pa. Code §§121.7a(c) and 121.7a(c)(1). Employer did not cease making temporary compensation payments until October 11, 2004 when, in accordance with Subsection 406.1(d)(5)(i) of the Act, it duly notified Claimant that payments were being stopped by filing a NSTC and a NCD as prescribed by the Department. Nothing in the Act or the Bureau Regulations can be interpreted to have required Employer to file a NSTC or NCD at the time it properly amended the 1st NTCP and contrary to Claimant's assertion, we find that there is no conflict between Section 406.1 of the Act, and Bureau Regulation Section 121.71a. Claimant cites this Court's decision in *Gereyes v. Workers' Compensation Appeal*

13

*Board (New Knight, Inc.)*, 793 A.2d 1017 (Pa. Cmwlth. 2002), to support its contention that a reduction in the amount paid an employee pursuant to a NTCP constitutes a violation of the Act. *Gereyes*, however, is not applicable here as it did not involve the amendment or correction of a NTCP, but rather was a case in which the employer unilaterally reduced the amount of compensation being paid the employee after his return to work with a partial wage loss. 793 A.2d at 1021.

Section 406.1 makes clear that upon the cessation of payments pursuant to a NTCP, an employee must file a claim to establish the liability of the employer, and the payment of compensation under a NTCP may not be used to support a claim for compensation. Bureau Regulation Section 121.7a deals solely with the NTCP, provides for its modification by amendment and is clearly not applicable in the circumstance where a NTCP has been converted to a NCP and the employer is deemed to have admitted liability.

Here, the 1st NTCP was properly amended and there was no conversion of NTCP to NCP. Accordingly, Claimant's contention that the 1st NTCP converted to a NCP and therefore Employer was obligated to pay benefits at the rate of $649.21 per week for all periods of time where Claimant was not working is completely without merit. As such, the Board properly affirmed the WCJ's determination that no violation of the Act occurred in this regard, no penalty provisions for failure to timely pay benefits were triggered,[9] and Employer's contest was reasonable.

---

[9] Section 435 of the Act, added by Section 3 of the Act of February 8, 1972, P.L. 25, permits a judge to award a penalty when it is apparent that an employer and/or insurer has violated the workers' compensation statute or regulations. 77 P.S. §991. It is within the judge's sound discretion whether to impose a penalty on an employer. *Musko v. Workers' Compensation Appeal Board (Calgon Carbon Corporation)*, 729 A.2d 657 (Pa. Cmwlth. 1999).

In its brief, Employer counters that Claimant was not on a suspension status when he returned to work because his claim in fact was a denied claim,[10] and thereby Claimant should have filed a timely Claim Petition and not a Reinstatement Petition; Employer argues that Claimant could not file to "reinstate" a denied claim, and his claim was time barred. In its decision, the WCJ found that Employer made a motion to dismiss the Reinstatement Petition as untimely at the September 1, 2011 hearing, and WCJ Hines, to which the case was originally assigned, dismissed the motion. (WCJ Decision, Finding of Fact (F.F.) ¶1.) The Board did not address the timeliness of the Reinstatement Petition, nor did it determine that Claimant was in error in filing such petition. In its decision, the WCJ noted that the October 11, 2004 NCD issued by Employer acknowledged that an injury took place, but indicated that Claimant was not disabled as a result of the injury and further indicated that all medical treatment related to the work injury would be reviewed for payment; the WCJ stated that "[e]ssentially, the [NCD] acted as a Medical Only Notice of Compensation Payable (MONCP)." (WCJ Decision, Procedural History; Claimant's Exhibit C-1, Notice of Workers' Compensation Denial.) In affirming the WCJ's decision not to assess penalties against Employer for any failure to continue payments to Claimant after it ceased payments and issued a NSTC and NCD, the Board also referenced a Medical Only

_____

[10] On the NSTC form filed, Employer checked the box where it is clearly stated: "WE HAVE DECIDED NOT TO ACCEPT LIABILITY AND ATTACHED IS A NOTICE OF WORKERS' COMPENSATION DENIAL. IF YOU BELIEVE YOU SUFFERED A WORK-RELATED INJURY, YOU WILL BE REQUIRED TO FILE A CLAIM PETITION WITH THE BUREAU OF WORKERS' COMPENSATION IN ORDER TO PROTECT YOUR FUTURE RIGHTS." (Claimant's Exhibit C-1.) The NSTC form further indicates that "[y]ou have three (3) years from the date of injury or discovery of your condition to file a Claim Petition for benefits. Since time limits can vary depending on the facts of your situation, you may wish to contact an attorney if you believe you may have a claim." (*Id.*)

NCP, stating, "[t]he WCJ correctly found that [Employer's] issuance of the NSTC accepting a work injury but denying disability acted as a "Medical Only" NCP…" (Board Opinion at 5.) Because the WCJ and the Board found that there was a Medical Only NCP, we find no error in their decisions to treat the claim as suspended with respect to Claimant's disability benefits, allow the filing of a Reinstatement Petition rather than a Claim Petition, and proceed to consider and then dismiss the Reinstatement Petition.

Claimant further argues that the Board erred as a matter of law in failing to reverse the WCJ's dismissal of the Reinstatement Petition, and in failing to find that Employer engaged Claimant in an unreasonable contest. We do not agree. A claimant who seeks reinstatement following a suspension of benefits must prove that: (1) through no fault of his own, the claimant's disability, i.e., earning power, is again adversely affected by the work-related injury; and (2) the disability is a continuation of that which arose from his original claim. *Bufford v. Workers' Compensation Appeal Board (North American Telecom),* 2 A.3d 548, 558 (Pa. 2010). Determination of credibility of witnesses is the prerogative of the WCJ, not the role of the Board or this Court. *Furnari v. Workers' Compensation Appeal Board (Temple Inland)*, 90 A.3d 53, 59-60, 70 (Pa. Cmwlth. 2014); *Gann v. Workers' Compensation Appeal Board (MBS Management/Wellington East Development)*, 792 A.2d 701, 704 (Pa. Cmwlth. 2002). The WCJ has exclusive province over questions of credibility and evidentiary weight, and may accept or reject the testimony of any witness, including medical experts, in whole or in part. *Furnari*, 90 A.3d at 59, 70; *Young v. Workers' Compensation Appeal Board (Chubb Corporation)*, 88 A.3d 295 (Pa. Cmwlth. 2014). The WCJ rejected the testimony of Dr. Menkowitz as it pertained to Claimant's inability to work as

neither credible nor persuasive because it was based, in part, on Claimant's testimony on this issue, which she rejected as not credible. (WCJ Decision, F.F. ¶18.) Here, Claimant's arguments dispute both the credibility determinations of the WCJ and the weight of the evidence, and he may do neither.

Claimant further contends that the WCJ failed to render a reasoned decision. As the Board aptly summarized:

> Section 422(a) of the [Act], 77 P.S. §834, provides that the WCJ shall file a reasoned decision, containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decision so that all can determine why and how a particular result was reached. The adjudication shall provide a basis for meaningful appellate review. *See Daniels v. Workers' Compensation Appeal Board (Tristate Transportation)*, 828 A.2d 1043 (Pa. 2003). Where the decision is sufficient for effective judicial review, such as with a summary of the testimony, and there is a showing of the grounds relied upon by the medical experts, and credible witnesses were identified, the "reasoned decision" provisions of Section 422(a) are satisfied. *Bullen Cos. v. Workers' Compensation Appeal Board (Housman)*, 960 A.2d 488 (Pa. Cmwlth. 2008). The WCJ did so in this case.

(Board Opinion at 12.) We find no error in the Board's determination that the WCJ neither disregarded competent evidence nor failed to issue a reasoned decision.

Finally, Claimant asserts that because he prevailed in connection with Employer's petition to terminate, he should therefore have been awarded reimbursement of the litigation costs incurred in connection with the defense of that petition. We find no error here. Section 440(a) of the Act, added by the Act of February 8, 1972, P.L. 25, *as amended*, provides:

17

> In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe ... in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, that cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.

77 P.S. §996(a). We have stated that an employer's contest is reasonable if the contest was brought to resolve a genuinely disputed issue, not merely to harass the claimant. *Dworek v. Workmen's Compensation Appeal Board (Ragnar Benson, Inc.),* 646 A.2d 713, 716 (Pa. Cmwlth. 1994). Here, the WCJ found that Employer had presented a reasonable contest on the issue of whether Claimant was fully recovered from his work injury. (WCJ Decision, Conclusions of Law.) Moreover, Claimant failed to show that he incurred any costs on the request to terminate. In *Jones v. Workers' Compensation Appeal Board (Steris Corporation)*, 874 A.2d 717, 722 (Pa. Cmwlth. 2005), we stated that where a claimant is only partially successful, before costs are awarded, a determination must be made as to whether the costs were incurred on the winning issue or the losing issue. "A claimant must prevail on the contested issue in order to be awarded litigation costs." 874 A.2d at 721, 722. All of the non-lawyer litigation expenses related to the issues in Claimant's petitions, on which Claimant did not prevail, as Claimant's medical

18

testimony related to whether his condition had worsened and his work injury was causing decreased earning power.

For the foregoing reasons, we conclude that the WCJ committed no error in denying Claimant's Petitions in this matter. Accordingly, the order of the Board is affirmed.

_____
JAMES GARDNER COLINS, Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William J. Church,                         :
                   Petitioner              :
                                            :
          v.                              :    No. 1068 C.D. 2015
                                              :
Workers' Compensation Appeal               :
Board (Wayne Cook t/a Cook                 :
Landscaping and Fleming Termite and        :
Pest Control),                             :
                   Respondents             :

# **O R D E R**

AND NOW, this 18th day of March, 2016, the order of the Workers'

Compensation Appeal Board in the above matter is AFFIRMED.

_____
JAMES GARDNER COLINS, Senior Judge