# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Custer, : 
                Petitioner : 
  : 
  : 
          v. : 
  : 
  : 
Workers' Compensation Appeal : 
Board (Somerset Welding and : 
Steel, Inc.), :    No. 1565 C.D. 2015
             Respondent :    Submitted: February 19, 2016


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                    FILED: July 5, 2016


        Anthony Custer (Claimant) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) July 28, 2015 order affirming the Workers' Compensation Judge's (WCJ) decision denying Claimant's consolidated Petition for Review of WC Benefits (Review Petition) and Petition for Reinstatement of WC Benefits (Reinstatement Petition). Essentially, Claimant presents one issue for this Court's review: whether Claimant met his burden in proving that the injury description in the December 9, 2011 Supplemental Agreement is materially incorrect.[1] After review, we affirm.

---

[1] In his brief, Claimant framed his issue in both the Statement of Question Involved and the Argument as:

> DID THE [BOARD] AND THE [WCJ] IN DENYING [CLAIMANT'S] WORKERS' COMPENSATION [BENEFITS] BOTH COMMIT REVERSIBLE ERROR BY NOT ADDRESSING WHETHER OR NOT [CLAIMANT'S] HIP PROBLEMS WERE AT LEAST AGGRAVATED IF NOT CAUSED BY THE WORK-RELATED INCIDENT AND BY LIMITING THEIR CONSIDERATION

On March 4, 2011, Claimant sustained a work injury described as a right leg fracture and began receiving weekly WC benefits pursuant to a Notice of Temporary Compensation Payable, which converted to a Notice of Compensation Payable (NCP) by operation of law. By June 16, 2011 Notification of Suspension, Somerset Welding and Steel, Inc. (Employer) notified Claimant that as of June 13, 2011, his benefits were being suspended based on his return to work at earnings equal to or greater than his pre-injury earnings. By December 9, 2011 Supplemental Agreement, Claimant's total disability benefits were reinstated effective November 28, 2011, and his injury description was revised to include a right femur fracture and a right knee tear.

By December 28, 2011 Notification of Suspension, Employer notified Claimant that his benefits were being suspended as of December 23, 2011, based on his return to work at wages equal to or greater than his pre-injury earnings. On June 6, 2012, Claimant filed the consolidated Review Petition and Reinstatement Petition. On August 20, 2013, Employer filed a Petition to Terminate WC Benefits (Termination Petition) which included a Request for Supersedeas based on Claimant's full recovery from the work injury as of August 8, 2013. The Supersedeas request was deemed denied because no order granted it.

By June 23, 2014 order, having concluded that Employer had failed to meet its burden of proving Claimant's full recovery from his work injury, the WCJ denied Employer's Termination Petition. The WCJ also denied Claimant's Review Petition because Claimant had failed to meet his burden of proving that the December 9, 2011 Supplemental Agreement's revised work injury description is materially

---

OF [CLAIMANT'S] REVIEW PETITION TO ONLY THE TWO INJURIES - RIGHT FEMUR FRACTURE AND RIGHT KNEE TEAR - INDICATED ON A SUPPLEMENTAL AGREEMENT FOR [WC BENEFITS] REACHED BETWEEN THE PARTIES IN THIS CASE?
Claimant Br. at 4, 18.

2

incorrect. Finally, since Claimant failed to meet his burden of proving that his work injury again caused him to lose earning power, the WCJ denied Claimant's Reinstatement Petition. Claimant appealed to the Board. On July 28, 2015, the Board affirmed the WCJ's decision. Claimant appealed to this Court.[2]

Claimant argues that the Board and the WCJ erred by not addressing whether Claimant's hip pain resulting from a labral tear and femoracetabular impingement was caused or at least aggravated by his work accident; thus, entitling Claimant to WC benefits.[3]

> Section 413(a) of the Workers' Compensation Act [(Act)], Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 771 authorizes a WCJ to amend an NCP shown to be incorrect.[FN]6 It is the burden of the party seeking to correct [an injury description] to prove that it was materially incorrect when it was issued. Unequivocal medical evidence is required where it is not obvious that an injury is causally related to the work incident. Whether medical evidence is equivocal is determined by reviewing the entire testimony of the medical witness, not just one sentence.
>
> > [FN]6 Section 413(a) [of the Act] states, in relevant part:
> >
> > > A workers' compensation judge may, at any time, review and modify or set aside a [NCP] and an original or supplemental agreement . . . if it be proved that such [NCP] or agreement was in any material respect incorrect.
> >
> > 77 P.S. § 771.

[2] "On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

[3] Notably, although not required, Claimant checked "Medical Bills Unpaid" and "Worsening of Condition," rather than "Incorrect Description of Injury" on his consolidated Petition. Reproduced Record at 10a.

*City of Pittsburgh v. Workers' Comp. Appeal Bd. (Wilson)*, 11 A.3d 1071, 1075 (Pa. Cmwlth. 2011) (citations omitted).  Further,

> [t]he WCJ, as the ultimate fact-finder in [WC] cases, 'has exclusive province over questions of credibility and evidentiary weight. . . .' *Anderson v. Workers' Comp. Appeal Bd. (Penn Ctr. for Rehab),* 15 A.3d 944, 949 (Pa. Cmwlth. 2010).  The WCJ's authority over questions of credibility, conflicting evidence and evidentiary weight is unquestioned.  *Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating[,] Inc.),* 873 A.2d 25 (Pa. Cmwlth. 2005).  The WCJ may accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Id.*  We are bound by the WCJ's credibility determinations. *Id.*

> Moreover, 'it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made.'  *Id.* at 29 (citation omitted).  We examine the entire record to see if it contains evidence a reasonable person might find sufficient to support the WCJ's findings. *Id.*  If the record contains such evidence, the findings must be upheld, even though the record may contain conflicting evidence. *Id.*  Additionally, we must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence.

*A&J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi)*, 78 A.3d 1233, 1238-39 (Pa. Cmwlth. 2013).

Claimant's treating physician P. James Ridella, M.D. (Dr. Ridella) testified within a reasonable degree of medical certainty:[4]

> Q. [Claimant's counsel David J. Flower] Now in your testimony just now, and I believe in [Employer's expert

---

[4] *See* Reproduced Record at 68a, Notes of Testimony June 18, 2013 at 19-20.

Jeffrey N. Kann, M.D.'s] [(Dr.] Kann[)[5]] testimony that he had given as a result of his review of the records and examination of [Claimant], he was of the opinion that the torn labrum really had nothing to do with the work-related injury where the broken femur occurred. Is that your opinion?

A. [Dr. Ridella] No, it isn't. I find it hard to believe the force that it takes to have a subtrochanteric fracture in a relatively young, hard-working man. And [the reason] I say that, is that he broke his labra, so his bone should have been pretty hard, and it was very thick. And he broke his bone at where it's considered biomechanically to be the strongest portion of the bone in the body where, at least, it can take the most tensile strength by stress estimates.

But it was a significant major injury to that femur, which would include the hip. So if the labral tear was there present before, it would have been aggravated by the fracture and the subsequent treatment, which included traction, pounding a nail into that hip, reaming it and stabilizing it.

Q. Now would it be possible to be asymptomatic and have the torn labrum prior to the work-related --- the breaking of the femur?

A. It is possible. In fact, it is possible until there is an injury. A torn labrum may not have any effect at all because it's such a slow process of causing problems.

It's usually a stressful event that causes the hip symptoms to crop up, at least in my experience and what I've seen other people who are experts in this field talk about, that there is always an event, but it's a slow[-]going process.

Reproduced Record (R.R.) at 66a, Notes of Testimony (N.T.) June 18, 2013 at 10-12.

However, Dr. Kann explained:

Q. [Employer's counsel Thomas P. Finn] Doctor, as far as this hip issue and impingement that you were talking about,

_____

[5] Dr. Kann performed two independent medical examinations of Claimant on March 12 and September 17, 2012, respectively. *See* Reproduced Record at 51a, Notes of Testimony March 14, 2013 at 12.

5

do you have an opinion as to whether or not that was related to the work injury of March 11th?

A. [Dr. Kann] It is not.

Q. And can you explain why?

A. Sure. First of all, clinically [Claimant] does not have femoroacetabular impingement. By MRI scan on strict measurements on both his right and left hips they're symmetric meaning there's no side-to-side difference at all. This is a congenital --- this is just the way [Claimant] was born. This is --- femoroacetabular impingement is not a work-related issue.

This is an issue which again somebody is born with if, in fact, they have it. There's no evidence that [Claimant's] hip joint was altered in any way by the work event. He had a thigh bone fracture which was appropriately treated and has healed without any sequelae.

Q. Doctor, prior to today's deposition, did you have the opportunity to review an operative report of Dr. Ridella dated February 4th, 2013 as well as some surgical photos relative to a procedure performed by Dr. Ridella on that date?

A. Yes, if you just give me one second, Mr. Finn.

[Claimant's attorney David J.] Flower just gave me the colored pictures, if you just give me a moment to look at them.

Q. Okay.

A. All right. Yes, I've had the opportunity to review both the operative report as well as the arthroscopic pictures from the surgery performed by Dr. Ridella on 2/4 of 2013.

Q. Do those documents in any way change or alter the opinions you offered relative to [Claimant]?

A. It does not.

Q. And can you explain why?

6

A. Sure. The operation performed was a right hip arthroscopic surgery. He notes he did a repair of a labral tear and a repair of a Cam, C-A-M, lesion. That would suggest that [Claimant's] ball of the ball and socket was not round but a little oblong, and so he tried to make it more round. Again - - -.

Q. Is that something that existed prior to the work injury in this matter?

A. Oh, that's without question. It's identical to his other hip.

Q. Doctor, this surgery that Dr. Ridella performed on February 4th, 2013, would that be related to the work injury of March 4, 2011?

A. It would not in my opinion.

Q. And would any follow-up care as a result of that surgery be related to the work injury of March 4th, 2011.

A. In my opinion it would not.

Q. Doctor have all the opinions you've offered here today been rendered within a reasonable degree of medical certainty?

A. Yes. They have.

R.R. at 57a-58a, N.T. March 14, 2013 at 34-37. Similarly, Jon A. Levy, M.D. (Dr. Levy)[6] opined:

Q. [Employer's counsel Thomas P. Finn] Doctor, with respect to this hip issue, did you have an opinion within a reasonable degree of medical certainty as to whether or not that was related to the work injury of March 4, 2011?

A. [Dr. Levy] I do.

Q. What is your opinion?

A. My opinion is it is unrelated to the work event.

---

[6] Dr. Levy performed an independent medical examination of Claimant on August 7, 2013. *See* R.R. at 89a, N.T. December 23, 2013 at 7.

Q. And can you explain to the judge the basis for your opinion?

A. Yes. Generally -- first of all, the mechanism of the injury, you know, generally, he fractured his femur from a fall. There potentially was some torsional injury which resulted in a meniscal tear, but it would be extremely unusual to have a joint injury at both ends of a bone and break the bone, because, generally, if the bone goes, then the ligaments and things at the other end of the bone are preserved or protected.

So, the sequence of events, let's say he had a torsional injury and he tore his meniscus. Then the next thing to go is the femur, so it's very unlikely that the hip would go. But more importantly, chronologically, as I went through the records, there was no manifestation of complaints of a hip problem. Even when he was recovering from his femur fracture and was healed, he was seen on two separate occasions by Dr. Kann. On both occasions, Dr. Kann examined his right hip and he had a normal, painless range of motion of the hip, which is very different from what I saw on examining the patient. He also underwent a functional capacity evaluation, which is an unbiased, objective test to quantify the patient's capabilities, and at that point, the patient also had a normal range of motion of the hip.

So, in essence, Dr. Ridella saw this patient pretty far into the course. A significant amount of time had passed from the injury until Dr. Ridella saw him, and, ultimately, even undergoing surgical intervention, the clinical findings were degenerative in nature, as well as congenital abnormality with the misshapen femoral head.

So, chronologically, there is not a correlation between the onset of hip pain and the injury. Biomechanically, I think it would be unlikely, once again, although not impossible, to injure both the hip, knee, and femur all simultaneously, and I don't believe that the time line supports a hip injury.

R.R. at 92a-93a, N.T. December 23, 2013 at 21-23.

"With regard to Claimant's medical condition, [the WCJ] [found] as [a] fact that: . . . [t]**he March 4, 2011 injury did not cause the right hip labral tear**

8

**and CAM lesion** diagnosed and treated by Dr. Ridella." WCJ Dec. at 11-12 (emphasis added). The WCJ expounded:

> Dr. Ridella, though a treating provider, did not credibly address Dr. Levy's point regarding the lack of right hip complaints in Claimant's treatment records. His explanation that other physicians had not looked for Claimant's symptoms is not credible, given the initial severity of the work injury and the number of providers Claimant has seen since that injury. He dismissed Dr. Kann's opinion that the labral tear was pre-existing, without addressing Dr. Kann's explanation for his opinion (i.e., the fraying of the ends seen on the surgical photos). And he described Claimant's complaints as consistent, without addressing the symptom magnification findings made by Dr. Levy, Dr. Kann and Dr. Antin.[7]

*Id.* at 12. The Board concluded:

> It is apparent the WCJ evaluated the substantial, competent evidence of record, made the requisite credibility determinations, and properly reached a well-explained, and well-reasoned, conclusion that Claimant did not meet his burden on the Petitions he filed. Thus, we see no reason to disturb the outcome in this matter.

Board Dec. at 10. After a thorough review of the record, this Court discerns no error in the Board's reasoning. Accordingly, because both the WCJ and the Board expressly addressed whether Claimant's hip pain resulting from a labral tear and femoracetabular impingement was caused by the work-related accident, the WCJ properly denied Claimant's Review and Reinstatement Petitions, and the Board correctly upheld the WCJ's decision.

For all of the above reasons, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[7] Dr. Antin performed an arthroscopic procedure on Claimant's knee on November 28, 2011. *See* R.R. at 24a, N.T. July 31, 2012 at 16.

Anthony Custer, : 
                   Petitioner :
: 
         v. : 
: 
Workers' Compensation Appeal : 
Board (Somerset Welding and : 
Steel, Inc.), :    No. 1565 C.D. 2015
                 Respondent : 

## O R D E R

AND NOW, this 5th day of July, 2016, the Workers' Compensation Appeal Board's July 28, 2015 order is affirmed.

_____
ANNE E. COVEY, Judge