IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomasina Owens, :
                   Petitioner :
                         :
        v. : No. 125 C.D. 2018
                         : Submitted: June 8, 2018
Workers' Compensation Appeal Board :
(Elwood Staffing Services Inc.), :
                Respondent :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                         FILED: July 17, 2018


Thomasina Owens (Claimant) petitions for review of the order of the Workers' Compensation Appeal Board (Board) affirming the Workers' Compensation Judge's (WCJ) decision denying her claim petition because she failed to meet her burden of establishing that she sustained a carpal tunnel injury or was disabled as a result of her July 19, 2015 work injury, as well as granting the termination petition of Elwood Staffing Services Inc. (Employer) because she had fully recovered from her burns incurred at work. For the reasons that follow, we affirm.

## I.

On February 2, 2015, Claimant was assigned by Employer to work at Oberthur Technologies as a machine operator where her duties required her to load, stamp and adjust 25,000 to 35,000 credit cards per day. On July 19, 2015, while at work, Claimant suffered burns when she picked up a coffee pot in the break room and coffee and grounds fell on her left arm and hand. On August 5, 2015, Employer issued a medical only Notice of Compensation Payable (NCP) listing a left arm burn as Claimant's accepted injury.

After being burned, Claimant performed light-duty work inspecting credit cards until January 2016 when her light-duty job changed to putting credit cards into a metal box and squeezing them with her right hand to make sure they were not cracked, allegedly causing pain going up her arm, knots in her right wrist and right thumb pain. On February 25, 2016, Claimant stopped working due to her bilateral hand and arm pain.

On March 21, 2016, Claimant filed a claim petition alleging that her July 19, 2015 work injury should be amended to include a "left arm and wrist, burn, carpal tunnel." (Record (R.) Item No. 2, Claim Petition at 1.) Employer filed an answer denying the allegations in the claim petition and asserting, *inter alia*, that Claimant's carpal tunnel was not causally related to her work injury or, in the alternative, that she was only partially disabled and work was available to her within her restrictions. Employer then filed a termination petition alleging that Claimant had fully recovered from her work-related injury as of April 20, 2016. Claimant filed an answer and the two petitions were consolidated.

## II.

In support of her claim petition, Claimant testified[1] that on July 19, 2015, she was pulling out a coffee pot at work when the coffee and grounds fell on her dominant left arm and hand. Claimant testified that over the next two days, she developed blisters, pain and heaviness in her left hand. She sought treatment at Einstein Hospital's emergency room where she was diagnosed with second-degree burns, given a carpal tunnel splint and pain medication, and was referred to the burn center. Claimant testified that she continued to work but experienced burning, heaviness, pain in her wrist and tingling in her fingers. She did not see any other physicians or seek any additional treatment until October 2015 when she was seen at WorkNet, an occupational medical office designed by Employer for the treatment of its employees for work-related injuries. There she was prescribed a splint, burn cream, physical therapy and work restrictions. She was then assigned a light-duty position where she would sit and inspect credit cards.

Claimant testified that in January 2016, her light-duty job was changed where she was required to use a tool to check each credit card and then put the credit card in a metal container and squeeze it with her right hand to make sure it did not crack. Claimant testified that due to this light-duty position, she began experiencing pain in her right thumb, burning in her hand, and numbness in her fingers that became sufficiently severe that she left her employment on February 25, 2016, and she has not looked for other work since that time. She

---

[1] Claimant testified at a hearing before the WCJ on May 11, 2016, and by deposition conducted on July 20, 2016.

3

testified that she then sought additional treatment with Morton L. Silverman, M.D. (Dr. Silverman) who started her on physical therapy.

As to her condition, Claimant testified that her condition has improved and admitted that at some point, WorkNet released her to return to work with no restrictions, but she felt she was unable to return to regular-duty work because she was still having pain, tingling and numbness in her fingers and wrists, and pain up her arms. Claimant testified that she is able to return to work with restrictions but she has not contacted Employer to see if it would be able to accommodate her.

Claimant also admitted that approximately 30 years ago, she developed carpal tunnel syndrome due to the repetitive nature of her job duties on an assembly line at Ford Electronics. At that time, she underwent surgery on her left hand, and she testified that she had no problems with the carpal tunnel up until her work injury in July 2015. Claimant also admitted that she was diagnosed with chronic left thumb tendonitis while working at Ford Electronics.

In support of her carpal tunnel claim, Claimant also offered Dr. Silverman's deposition testimony. He testified that he evaluated Claimant on November 30, 2015, and that his physical examination demonstrated a positive Tinel's sign at her left wrist, mild decreased pain sensation in the left arm and hand, weak left hand grip, and some skin discoloration at the base of her left thumb and wrist. Based on those results, Dr. Silverman testified that he diagnosed Claimant with left carpal tunnel syndrome and healed burns of the left hand and

4

wrist, both of which he attributed to her July 2015 work injury. He testified that he started Claimant on physical therapy to reduce the pain in her hand and improve her motion.

Dr. Silverman testified that when he saw Claimant on February 22, 2016, she had increased pain and pain in her right wrist. He attributed her symptoms in her right wrist to overuse of that hand because of the repetitive work she was performing on light-duty. Dr. Silverman prescribed Claimant Naprosyn and advised her not to work for the next several weeks. When he saw Claimant on March 14, 2016, she reported that both hands continued to hurt, that there was a positive Tinel's sign in both wrists, and a moderately decreased left hand grip. At her final examination on July 18, 2016, there was a positive Tinel's sign at both of Claimant's wrists as well as her left elbow and right shoulder, marked decrease in left hand grip strength, and tenderness at her right elbow and left thumb.

Dr. Silverman reviewed the EMG study performed by Dr. Scott Fried (Dr. Fried) on April 13, 2016, which showed, *inter alia*, significant carpal tunnel syndrome on the right and moderate carpal tunnel on the left. He testified that he also reviewed Claimant's March 31, 2016 functional capacity evaluation (FCE), wherein Claimant demonstrated that she was able to perform 56.6% of the physical demands of her pre-injury job as a machine operator.

Dr. Silverman opined that Claimant had second-degree burns to the left forearm and wrist, from which she had fully recovered, as well as left carpal tunnel syndrome and bilateral radial tunnel syndrome. Also, due to the repetitive

5

use of her right hand during her light-duty work, Claimant had developed right carpal tunnel syndrome. He further testified that as of February 25, 2016, Claimant was unable to perform either her pre-injury job or her light-duty job due to her work-related injury. Dr. Silverman testified that "it is known that burn injuries do cause cases of carpal tunnel." (R. Item No. 18, C-3 Transcript of Dr. Morton Silverman, at 26.) He referred to medical literature, specifically the *Annals of Burns and Fire Disasters*, which indicates that carpal tunnel can be caused by burns, particularly thermal burns, and that the symptoms may take 4 to 14 months to fully develop. Dr. Silverman testified that he disagreed with the opinion of Employer's expert witness, Sidney M. Jacoby, M.D. (Dr. Jacoby), that Claimant's carpal tunnel was not related to her burn injury because Claimant had been diagnosed with carpal tunnel at her initial emergency room visit.

On cross-examination, Dr. Silverman agreed that none of Claimant's WorkNet records indicated that she had carpal tunnel syndrome or that she complained of any carpal tunnel symptoms in her left wrist. While Claimant treated with WorkNet from July 2015, the first noted problems with her left wrist or any carpal tunnel symptoms did not come until October 2015. Dr. Silverman also admitted that Claimant had shown some improvement and, at the time of his deposition, she was capable of some form of light-duty work.

Dr. Silverman stated that he referred Claimant to David Zelouf, M.D. (Dr. Zelouf), a hand surgeon with the Philadelphia Hand Center, who saw her on January 11, 2016. Dr. Zelouf reported a benign examination with no obvious pathology, and noted that Claimant had produced an obvious lack of effort in all

6

five of her grip test findings; therefore, he released her back to unrestricted work duties. However, Dr. Silverman testified that Dr. Zelouf did not perform a Tinel's sign and was unable to review Claimant's EMG and MRI studies. Dr. Silverman attempted to follow up with Dr. Zelouf several times but was unable to reach him; therefore, he referred Claimant to Dr. Fried.

In support of its termination petition, Employer offered the deposition testimony of Dr. Jacoby, a board certified orthopedic surgeon. He testified that he performed an independent medical examination (IME) of Claimant on April 20, 2016, at which time he obtained a history, reviewed medical records and diagnostic studies, and conducted a physical examination. In recounting Claimant's history, Dr. Jacoby noted that when she returned to WorkNet in November 2015, her burn injury had resolved but she complained of numbness and tingling. The physician's assistant recommended that Claimant report a new incident as he felt it was unrelated to her July 2015 work injury, and Claimant was released to full duty.

Dr. Jacoby testified that on physical examination, Claimant had symmetric cervical, shoulder and elbow range of motion, and he did not find any scars, scar contracture or evidence of the prior left arm burn. Claimant had a benign upper extremity examination, despite her subjective complaints and inconsistencies with regard to her passive and active ranges of motion. Dr. Jacoby testified that Claimant's median and ulnar nerves were objectively found to be within normal limits, and that the median nerve is involved in carpal tunnel syndrome. Dr. Jacoby performed a grip strength test and found that Claimant had physiologic grip strength on a bell curve on the right, and a flat line on the left. He

7

testified that Claimant displayed a lack of effort with grip testing, particularly with her left hand and wrist. Dr. Jacoby did not find any signs of dystrophy or contractures, which would indicate a higher level of injury.

Dr. Jacoby reviewed Claimant's November 3, 2015 EMG report and raw data, noting that only her left side had been evaluated. Dr. Jacoby noted a subtle delay across the left carpal tunnel, with an essentially normal sensory evaluation, no neurogenic changes, and no evidence of left ulnar or motor changes. Dr. Jacoby also reviewed Claimant's April 13, 2016 EMG report which showed that multiple nerves had subtle delays in function. However, Dr. Jacoby noted that these findings were not surprising in someone of Claimant's age and given her previous carpal tunnel surgery. Dr. Jacoby testified that this second EMG report did not change his overall opinion.

Dr. Jacoby diagnosed Claimant with status post second-degree burns to the left forearm and left arm pain, which he stated was a catch-all to describe her subjective residual complaints. He opined that Claimant's left forearm burn had healed with an excellent prognosis as there was barely any residual scarring or burn-related sensitivity. He further opined that while her residual complaints of left upper extremity weakness, pain, numbness and tingling may exist, they were not causally related to her work-injury as the mechanism of injury was inconsistent with the complaints noted. In addition, any discomfort would be due to age-related changes or additional nonorganic factors.

Dr. Jacoby reviewed Dr. Silverman's testimony and August 1, 2016 report. He testified that he agreed with Dr. Silverman's opinion of a healed burn, but disagreed with the opinion that Claimant's right hand and wrist problems were related to her work injury or light-duty job duties because Claimant's burn had healed, and she had excellent skin integrity with no evidence of contracture. In addition, Claimant demonstrated multiple inconsistencies, including her break-away pain and her passive and active ranges of motion. Dr. Jacoby testified that he reviewed the article Dr. Silverman relied upon and it described individuals with high degree burns involving a significant total body surface area, which was incompatible with Claimant's superficial burn of limited surface area. Dr. Jacoby opined that Claimant could return to work without any restriction and he did not recommend any additional treatment with regard to her work injury.

The WCJ found Claimant's testimony to be credible regarding the occurrence of her July 19, 2015 work injury and subsequent medical treatment. However, he did not find her to be credible regarding the onset of carpal tunnel syndrome and its relationship to her work injury since she had prior carpal tunnel surgery and did not complain of carpal tunnel symptoms until three months after the work injury. The WCJ also found the testimony of Dr. Jacoby to be more credible than that of Dr. Silverman. He found credible Dr. Jacoby's opinion that Claimant's symptoms were not related to her work injury because Claimant's medical history showed she was released to full-duty work in August 2015, and was diagnosed as having a benign examination with multiple inconsistencies by Dr. Zelouf in January 2016. Moreover, the WCJ noted Dr. Jacoby credibly explained that Claimant's EMG findings were related to her past carpal tunnel

9

surgery, and the medical literature Dr. Silverman relied upon pertained to individuals with high degree burns that were not present in Claimant's case.

Based on all of the above, the WCJ found that "Claimant's current complaints including bilateral carpal tunnel syndrome are not related to the July 19, 2015 work injury" (WCJ's January 6, 2017 Decision, Finding of Fact Number 9), and that she was not disabled as a result of her July 19, 2015 work injury. The WCJ also found that Employer met its burden of proving that Claimant had fully recovered from her work injury in the nature of a left arm burn as of April 20, 2016. Therefore, the WCJ denied Claimant's claim petition and granted Employer's termination petition.

**III.**

Claimant appealed to the Board arguing that the WCJ's decision was not based on substantial competent evidence and was not well reasoned. Claimant also argued that the WCJ failed to consider whether she suffered an aggravation of her preexisting carpal tunnel syndrome due to her work injury.

The Board affirmed the WCJ's decision that Claimant failed to meet her burden because the WCJ rejected her testimony as well as that of Dr. Silverman that her work injury caused her carpal tunnel syndrome or that it caused any disability. Instead, the WCJ accepted Dr. Jacoby's testimony that Claimant's work injury in the nature of a left arm burn had fully resolved. The Board noted that the WCJ did not directly address whether Claimant's repetitive job duties related to her carpal tunnel syndrome. However, the Board found that there was no

10

credited substantial, competent evidence to support this claim because the WCJ accepted Dr. Jacoby's testimony that Claimant's carpal tunnel was not related in any way to her work injury and rejected Dr. Silverman's conflicting opinion. This appeal followed.[2]

## IV.

Claimant's main argument on appeal is that the WCJ erred in denying her claim petition and granting Employer's termination petition by failing to address her argument that she suffered an aggravation of her preexisting carpal tunnel syndrome. Claimant argues that her light-duty job duties were admittedly repetitive in nature, and that the WCJ failed to consider whether such repetitive work duties aggravated her underlying bilateral carpal tunnel syndrome.

It is well established that a claimant in a workers' compensation case bears the burden of proving all of the elements necessary to support an award. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592 (Pa. 1993). This includes proving that the claimant sustained an injury during the course and scope of employment, causation and the length or duration of the

---

[2] In a workers' compensation proceeding, this Court's scope of review is limited to determining whether errors of law were committed, whether constitutional rights were violated, and whether necessary findings of fact are supported by substantial evidence. *Roundtree v. Workers' Compensation Appeal Board (City of Philadelphia)*, 116 A.3d 140, 143 n.4 (Pa. Cmwlth. 2015). Substantial evidence has been defined as "such relevant evidence as a reasonable person might accept as adequate to support a conclusion. . . . In performing a substantial evidence analysis, this [C]ourt must view the evidence in a light most favorable to the party who prevailed before the factfinder." *Waldemeer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003) (citation omitted).

11

claimant's disability. *Coyne v. Workers' Compensation Appeal Board (Villanova University and PMA Group)*, 942 A.2d 939, 945 (Pa. Cmwlth. 2008). Specifically, to establish a work-related aggravation of a preexisting condition, a claimant must show a causal connection between the work injury and the aggravation. *Chick-Fil-A v. Workers' Compensation Appeal Board (Mollick)*, 792 A.2d 678 (Pa. Cmwlth. 2002). "Where the causal connection is not obvious, unequivocal medical testimony is required to establish the causal connections between the work incident and the disability." *Southwest Airlines/Cambridge Integrated Service v. Workers' Compensation Appeal Board (King)*, 985 A.2d 280, 286 (Pa. Cmwlth. 2009) (citation omitted).

Claimant has not met this burden as there is no credible evidence that she is disabled. First, the WCJ did not find Claimant's testimony to be credible regarding the onset of her carpal tunnel syndrome and its relationship to her work injury. Specifically, the WCJ noted that while Claimant treated with WorkNet from July 2015 to October 2015, she did not report any problems or carpal tunnel symptoms with her left wrist until the end of October 2015. Moreover, Claimant did not establish that there was a causal connection between her left arm burn and her purported bilateral carpal tunnel syndrome because the WCJ found Dr. Silverman's testimony not to be credible. Rather, the WCJ accepted as credible Dr. Jacoby's testimony and his opinion that Claimant's symptoms were not related to her work injury. Claimant's medical history showed she was released to full-duty work in August 2015, and Dr. Zelouf's January 2016 report indicated a benign examination with multiple inconsistencies. Dr. Jacoby's physical examination of Claimant revealed that both median nerves were within normal

12

limits, she failed to put forth adequate effort in several grip tests, and he was not surprised by any changes in her studies given her age and prior carpal tunnel surgery. Finally, the WCJ found that Dr. Jacoby critically refuted the medical literature Dr. Silverman relied upon in rendering his opinions because it pertained to individuals with high degree burns that were not present in Claimant's case.

Even ignoring that it was Claimant's burden, which she did not sustain because the WCJ did not accept the proffered testimony in support of that claim, there is more than substantial, competent evidence to support the WCJ's determination that Claimant failed to prove that she was disabled and that her current complaints were not related to her work injury. There was no need or reason for the WCJ to address Claimant's argument that her light-duty job duties aggravated her preexisting carpal tunnel syndrome because the WCJ determined she was not disabled.[3]

Claimant also takes issue with the WCJ's finding that she did not complain of carpal tunnel symptoms until three months after her work injury. Again, the WCJ specifically found Claimant's testimony not to be credible with

---

[3] In a related argument, Claimant asserts that the WCJ's decision is not reasoned because it did not address the argument that her light-duty job duties aggravated her preexisting carpal tunnel syndrome. Again, there was no reason for the WCJ to address this issue as he determined that Claimant failed to prove that she was disabled and there was not substantial, competent evidence to support Claimant's argument. In addition, the WCJ's decision is reasoned because it allows for adequate appellate review without further elucidation, *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa. 2003), and because the WCJ summarized the conflicting medical testimony and adequately explained his credibility determinations. *Amandeo v. Workers' Compensation Appeal Board (Conagra Foods)*, 37 A.3d 72, 76 (Pa. Cmwlth. 2012).

respect to the timing or onset of her carpal tunnel syndrome. Essentially, Claimant asks this Court to accept the evidence she presented and to overturn the credibility determinations of the WCJ. As we have stated over and over again, "[t]he WCJ, as the ultimate fact-finder in workers' compensation cases, 'has exclusive province over questions of credibility and evidentiary weight.'" *A & J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi)*, 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013) (quoting *Anderson v. Workers' Compensation Appeal Board (Penn Center for Rehab)*, 15 A.3d 944, 949 (Pa. Cmwlth. 2010)). We are bound by these credibility determinations and cannot overturn them on appeal. "Moreover, it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *A & J Builders, Inc.*, 78 A.3d at 1238.[4]

        Accordingly, the order of the Board is affirmed.

 

                             _____

                             DAN PELLEGRINI, Senior Judge

---

[4] The only argument Claimant makes in support of her claim that the WCJ erred in granting Employer's termination petition is that he did not address her argument that the work injury aggravated her preexisting carpal tunnel syndrome. This argument is without merit for the reasons stated above. In addition, we note that there is no dispute that Claimant has fully recovered from her initial accepted work injury of a left arm burn as even Claimant's treating physician, Dr. Silverman, testified to this fact.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomasina Owens,      :
      Petitioner :
          :
   v.       :  No. 125 C.D. 2018
          :
Workers' Compensation Appeal Board :
(Elwood Staffing Services Inc.),  :
      Respondent :

# **O R D E R**

  AND NOW, this 17<u>th</u> day of <u>July</u>, 2018, the order of the Workers' Compensation Appeal Board dated January 17, 2018, at No. A17-0022, is hereby affirmed.

         _____
         DAN PELLEGRINI, Senior Judge