Georgette ANDERSON, Petitioner

v.

**WORKERS' COMPENSATION AP-
PEAL BOARD (PENN CENTER
FOR REHAB), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Sept. 24, 2010.
Decided Dec. 23, 2010.
Publication Ordered March 4, 2011.

Larry Pitt, Philadelphia, for petitioner.

Neil T. Dombrowski, Paoli, for respondent.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge McGINLEY.

Georgette Anderson (Claimant) appeals from the Order of the Workers' Compensation Appeal Board (Board) which affirmed the Workers' Compensation Judge's (WCJ) denial of Claimant's Reinstatement and Review Petitions and awarded Penn Center for Rehabilitation (Employer) a termination of benefits.

On May 8, 2006, Claimant injured her back at work. On June 8, 2006, Employer issued a notice of compensation payable (NCP), acknowledged liability for a low back strain, and commenced paying compensation benefits.

Employer referred Claimant to the University of Pennsylvania Hospital Occupational Health where she was given a lumbar MRI, prescribed aqua therapy, medication and light duty work. On August 11, 2006, the physician at Occupational Health released Claimant to full duty work without restrictions. Claimant did not return to work. She did not believe that she was capable of performing full duty because she was unable to bend or lift.

On August 11, 2006, Employer issued a notice of suspension based upon her release to return to work at no loss of earnings. Employer indicated that Claimant's job was available to her. Claimant did not file a challenge to the notice of suspension.

In March 2007, Claimant retained legal counsel who referred her to John Bowden, M.D. (Dr. Bowden) and Norman Stempler, D.O. (Dr. Stempler).

On March 19, 2007, more than seven months after the notice of suspension, Claimant petitioned to reinstate benefits and alleged that her disability had reoccurred as of August 11, 2006. Claimant also filed a petition to review the NCP and sought to change the description of injury from a lumbar strain to a herniated disc at L4–5, T10–11, and T11–12, with right-sided radiculopathy. Employer answered both petitions and denied all allegations.

Hearings were held before the WCJ on April 13, 2007, and April 9, 2008. Claimant testified at both hearings and submitted the deposition testimony of her treating physicians, Dr. Bowden and Dr. Stempler.

In opposition to Claimant's petitions, Employer submitted the testimony of its evaluating physician, Richard Mandel, M.D. (Dr. Mandel) and Claimant's medical records from Temple University Hospital which related to a non-work related injury Claimant sustained on August 3, 2006, several months after the work-injury.

### Claimant's Testimony

Claimant testified that she was employed by Employer as a certified nursing assistant. Her duties included lifting patients, feeding them, and moving them. She explained that on May 8, 2006, she injured her back while attempting to lift a patient from a bed to a wheelchair. She immediately reported her injury to Employer and went to the emergency room at Temple University Hospital where she was examined and prescribed Ibuprofen. Hearing Transcript, April 13, 2007 (H.T., 4/13/07), at 7–8; Reproduced Record (R.R.) at 86a–87a.

Claimant subsequently returned to work with ongoing back pain. Claimant performed light duty work until May 24, 2006, when Employer eliminated the job. Claimant testified that she continued to treat with Dr. Bowden, still experienced back pain, and did not return to work after May 24, 2006. H.T., 4/13/07 at 8–11; R.R. at 87a–90a.

On cross-examination, Claimant acknowledged that she suffered a non-work related injury on August 3, 2006, when she

"hit her back on the door" at home. Hearing Transcript, April 9, 2008, at 23; R.R. at 70a. She also admitted that the August 3, 2006, injury caused her to experience an increase in pain and visit the emergency room. Finally, she admitted that Employer indicated her job was still available on August 11, 2006, but she did not feel that she was able to return to work. H.T., 4/13/07 at 12; R.R. at 91a.

### Dr. Stempler's Testimony

Dr. Stempler, board-certified in orthopedic surgery, began treating Claimant on March 19, 2007. Claimant reported a history of sudden, severe back pain on May 8, 2006, while attempting to lift a patient from a bed to a wheelchair. Claimant also related a past history of periodic backaches, noting that she never experienced severe back pain or any leg pain prior to May 8, 2006. As of March 19, 2007, Claimant continued experiencing low back pain and radiating right leg pain. An examination revealed "tenderness of the musculature surrounding the neck and upper thoracic area." Deposition of Normal B. Stempler, D.O., July 16, 2007 (Dr. Stempler Deposition), at 8; R.R. at 157a. She also had a "painful spine and limited range of motion with tenderness." *Id.*

A lumbar MRI performed on May 24, 2006, showed a posterior disc herniation at L4–5 and right, paracentral disc herniations at T10–11 and T11–23. Dr. Stempler prescribed physical therapy and outpatient pain management. Dr. Stempler Deposition at 20; R.R. at 169a.

Based upon Claimant's history, examination and the MRI findings, Dr. Stempler opined that her diagnosis was directly related to the May 8, 2006, lifting incident. Dr. Stempler Deposition at 9; R.R. at 158a. He further opined that Claimant was disabled from returning to her duties

as a certified nursing assistant. Dr. Stempler Deposition at 22; R.R. at 171a.

On cross-examination, Dr. Stempler agreed that the MRI report which reflected the L4–5 disc herniation was associated with osteoarthritic changes caused by wear and tear over time. He also admitted that the T10–11 disc herniation was degenerative and admitted that he did not know how long those findings shown in the MRI were there because he did not have any medical records which pre-dated the May 8, 2006, work-injury. Dr. Stempler Deposition, at 20–21; R.R. at 169a–170a.

### Dr. Bowden's Testimony

Dr. Bowden, board-certified in family medicine and pain management, began treating Claimant on March 15, 2007. Claimant presented a history of back injuries at work. She related that her post injury care consisted of an initial visit to the emergency room and follow up treatment with Occupational Health. Deposition of John J. Bowden, Jr., M.D., (Dr. Bowden Deposition), July 11, 2007, at 6–7; R.R. at 122a–123a.

Dr. Bowden examined Claimant, reviewed her MRI and performed an EMG which documented a right L5–S–1 radiculopathy. Dr. Bowden diagnosed Claimant with a moderate focal posterior L4–5 disc herniation as well as right-sided disc herniations at T10–11 and T11–12. He prescribed Flexeril and Motrin and physical therapy three times a week. Dr. Bowden Deposition at 8–9; R.R. at 124a–125a.

Based on Claimant's history, her clinical presentation, post-injury medical records, Dr. Bowden opined that Claimant's diagnosis was directly related to the May 8, 2006, work injury. Dr. Bowden Deposition at 14; R.R. at 13a.

On cross-examination, Dr. Bowden admitted that he did not know if Claimant's

disc herniations predated May 8, 2006. Dr. Bowden Deposition at 20–21; R.R. at 169a–170a.

### Dr. Mandel's Testimony

Dr. Mandel, board-certified in orthopedic surgery, reviewed Claimant's medical records and examined Claimant on August 30, 2007. He described her as morbidly obese. His examination did not reveal the neurological loss she described.

Dr. Mandel reviewed the MRI films and agreed that the films revealed herniated discs at L4–5, T10–11, and T11–12. However, he did not believe that the work injury caused the herniations. He attributed the herniated discs to degenerative disc disease and he did not believe that the work injury aggravated Claimant's pre-existing degenerative disc disease. Dr. Mandel did not believe that the work injury caused the herniations because "that type of activity in which she was engaged is not the type of activity that can cause three simultaneous disc herniations." Deposition of Richard J. Mandel, February 7, 2008, at 30; R.R. at 211a. He further explained that transferring one patient "is not a high energy trauma." *Id.*

### WCJ's Decision

On November 5, 2008, the WCJ denied Claimant's reinstatement and review petitions and terminated benefits as of August 30, 2007. In rendering this decision, the WCJ rejected Claimant's evidence as neither credible nor persuasive and accepted Dr. Mandel's testimony as both credible and persuasive. Based upon these credibility determinations, the WCJ concluded that Claimant had failed to satisfy her burden of proving that after August 11,

2006, her earning power was once again adversely affected by her work-related injury and further that Claimant failed to demonstrate that the NCP's description of injury was incorrect to the extent that it failed to include lumbar and thoracic disc herniations and right radiculopathy. The WCJ further concluded that Employer satisfied its burden of proving that Claimant fully recovered from her work injury as of August 30, 2007.

### Board's Decision

The Board affirmed the WCJ's determination in its entirety, noting that a review of the record and the WCJ's determination did not contain reversible errors. Finding that Claimant had the burden of proving that her work injury adversely affected her earning power on and after August 11, 2006, as well as the burden of proving a causal connection between her work-injury and the herniated lumbar and thoracic discs, the Board concluded that Claimant did not shoulder her burden because the WCJ rejected her testimony, as well as her medical evidence. The Board also concluded that the WCJ's refusal to expand the description of injury in the NCP was not a capricious disregard of medical evidence, noting that while Dr. Mandel acknowledged that Claimant had herniated discs, the *cause* of the herniations was in dispute. Finally, the Board concluded that Dr. Mandel's testimony constituted substantial evidence which supported the WCJ's decision.

### Claimant's Appeal

On appeal[1], Claimant argues that the Board erred when it (1) affirmed the WCJ's denial of her reinstatement peti-

---

1. This Court's review is limited to a determination of whether an error of law was committed, whether necessary findings of fact were supported by substantial evidence, or whether constitutional rights were violated. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa.Cmwlth. 15, 589 A.2d 291 (1991).

tion; and (2) affirmed the WCJ's denial of her review petition.

First, Claimant asserts that the Board erred when it affirmed the WCJ's denial of her reinstatement petition. Claimant contends that Employer had no basis to file a suspension of benefits pursuant to Section 413(c) of the Pennsylvania Workers' Compensation Act (Act).[2] Claimant asserts that the basis for a Section 413(c) suspension is a claimant's *actual* return to work at no loss of earnings. It does not authorize a suspension of benefits where a claimant was medically cleared to return to work, but did not. She argues that Employer's Section 413(c) notice of suspension was insufficiently premised not on her return to work, but only on a medical clearance to return to work. Therefore, because Employer's suspension was unauthorized, an automatic reinstatement of benefits as of August 11, 2006, should have been awarded.

Initially, this Court disagrees that reinstatement should have been automatic. Pursuant to Section 413(c), if a claimant does not challenge the **notification within 20 days, the Claimant "shall be deemed to have admitted to the return to work and receipt of wages at prior or increased earnings."** 77 P.S. § 774.2(2). This Section of the Act specifically states that when a claimant fails to challenge the suspension, the notification **shall have the same binding effect as a fully executed supplemental agreement.**

■ Unfortunately, here, having failed to challenge the suspension notification Claimant, in effect, agreed to the return of work, receipt of wages and suspension.

■ With respect to her reinstatement petition filed seven months after the suspension of benefits, it was her burden to justify a change in status quo. The onus was on her to establish that her earning power was adversely affected by her work-injury. *Pieper v. Ametek–Thermox Instruments Division,* 526 Pa. 25, 584 A.2d 301 (1990).

Here, the WCJ chose to reject Claimant's lay and medical testimony as incredible. The WCJ, instead, accepted the testimony of Dr. Mandel that Claimant sustained a back sprain which resolved by August 11, 2006. There was also evidence that Claimant injured her back at home on August 3, 2006, just eight days before she was to return to her full duty job.

This Court has reviewed the record and must agree with the Board that the WCJ's decision was supported by substantial competent evidence. This issue is, therefore, without merit.

■ Next, Claimant argues that the Board erred when it affirmed the WCJ's denial of her review petition. She basically claims that the WCJ erred when he accepted Employer's medical evidence over her medical evidence.

■ A claimant has the burden to establish the compensability of her alleged additional conditions. *Birmingham Fire Insurance Co. v. Workmen's Compensation Appeal Board (Kennedy),* 657 A.2d 96 (Pa. Cmwlth.1995).

Here, the WCJ rejected the testimony of Claimant's experts in favor of Employer's experts. Claimant established that she had mid and low back herniations.

2. Act of June 2, 1915, P.L. 736, *as amended,* added by Section 2 of the Act of July 1, 1978, P.L. 692, 77 P.S. § 774.2. Section 413(c) authorizes an employer to suspend a claimant's benefits where the claimant has returned to work at no loss of earnings. Section 77 P.S. § 774.2. Section 413(c) of the Act grants insurers the right to immediately suspend a claimant's benefits without first seeking preliminary approval from the WCJ.

However, Claimant failed to establish that the cause of her disability was the May 8, 2006, work-injury. The WCJ accepted as credible the opinion of Dr. Mandel who testified that Claimant's disc herniations were degenerative in nature and unrelated to the work-injury.

The WCJ, as the ultimate finder of fact in compensation cases, has exclusive province over questions of credibility and evidentiary weight, and is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki)*, 140 Pa.Cmwlth. 461, 593 A.2d 921, *petition for allowance of appeal denied*, 529 Pa. 626, 600 A.2d 541 (1991). This Court will not disturb a WCJ's findings when those findings are supported by substantial evidence. *Nevin Trucking v. Workmen's Compensation Appeal Board (Murdock)*, 667 A.2d 262 (Pa.Cmwlth.1995). Claimant essentially asks this Court to reweigh the evidence. This Court will not do so.

The order of the Board is affirmed.

## ORDER

AND NOW, this 23rd day of December, 2010, the order of the Workers' Compensation Appeal Board in the above-captioned case is hereby affirmed.