# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lizette Banks,  :
                 Petitioner  :
   :
              v.  : No. 1721 C.D. 2017
   : Submitted: June 22, 2018
Workers' Compensation Appeal  :
Board (Albert Einstein Medical  :
Center),  :
             Respondent  :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                 FILED: July 18, 2018

Lizette Banks (Claimant) petitions for review of the order of the Workers' Compensation Appeal Board (Board) affirming the Workers' Compensation Judge's (WCJ) decision to terminate compensation benefits because Claimant had fully recovered from her work-related injury, as well as denying Claimant's penalty petition because she failed to prove a violation of the Workers' Compensation Act (Act).[1]  For the reasons that follow, we affirm.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

**I.**

Claimant began working for the Albert Einstein Medical Center (Employer) as a licensed practical nurse (LPN) in 1989. Her job duties consisted of full patient care, including lifting, gripping, blood draws, administering medications and IVs, and writing. Apparently, due to repetitive use, on August 20, 2001, Claimant sustained a work-related injury to her right thumb as well as a forearm strain. Employer subsequently issued a Notice of Compensation Payable (NCP) acknowledging Claimant's injury.

On February 4, 2002, by supplemental agreement, Claimant's benefits were suspended. Claimant underwent surgery on February 18, 2002, performed by Stephanie Sweet, M.D. (Dr. Sweet) for work-related DeQuervain's Syndrome. Pursuant to a supplemental agreement, on February 26, 2002, her benefits were reinstated. On June 3, 2002, Dr. Sweet released Claimant to return to full-duty work. Rather than return to her LPN position, on June 12, 2002, Claimant returned to work in a light-duty capacity in Employer's laboratory filing papers and slides. Employer then issued a Notification of Suspension effective June 12, 2002, representing that Claimant returned to work at earnings equal to or greater than her time-of-injury earnings. On November 16, 2002, Employer laid off Claimant for economic reasons.

The parties entered into a stipulation adopted by WCJ A. Michael Snyder (WCJ Snyder) by order dated October 18, 2007, expanding the description of Claimant's work injury to include right brachial plexopathy, painful neuroma of the right superficial radial nerve, bilateral cubital tunnel syndrome, bilateral wrist

and left periscapular trigger points, right lateral epicondylitis, and bilateral DeQuervain's Syndrome. Pursuant to this stipulation, Claimant's disability benefits were reinstated from November 16, 2002. The stipulation also specifically stated that Employer retained the right to pursue a termination petition.

Employer then filed a termination petition alleging that Claimant had fully recovered from her work-related injury as of March 30, 2006, later amended to July 10, 2008. Claimant filed a penalty petition alleging that Employer violated the Act by filing its June 12, 2002 notification of suspension that inaccurately claimed that she had returned to work at wages no less than those before her injury, and seeking a 50% penalty on unpaid benefits for the period of June 12, 2002, to March 7, 2007. Employer's termination petition and Claimant's penalty petition were consolidated and initially assigned to WCJ Snyder for hearing and disposition.

## II.

In support of its termination petition, Employer offered the deposition testimony of Stephen L. Cash, M.D. (Dr. Cash), a board-certified orthopedic surgeon with additional accreditation in hand surgery. He testified that he performed an independent medical examination (IME) of Claimant on March 30, 2006, at which time he obtained a history, reviewed medical records and conducted a physical examination. Dr. Cash noted that while taking Claimant's history, she complained of pain in both arms and indicated that her pain resulted from lifting and pulling patients during her job with Employer as an LPN, but there had been no discrete injury or accident.

3

Dr. Cash testified that upon examination, there was no overt wasting, discoloration or deformity of either arm, no trophic changes, and Claimant's ranges of motion were normal. He testified that neurological testing produced reports of discomfort, but there was no definitive nerve damage. Claimant's cervical spine motions were normal, albeit done slowly and with complaints of pain. Dr. Cash found no correlation between Claimant's examination and her complaints and concluded that her complaints were non-physiological. He found no evidence of any problems with her arms because of her work injury and no objective explanation for her diffuse complaints. Dr. Cash concluded, to a reasonable degree of medical certainty, that Claimant was fully recovered, did not need any additional medical treatment and could return to her pre-injury job without restriction.

Dr. Cash performed another IME of Claimant on July 10, 2008. At that time, Claimant informed Dr. Cash that Scott Jaeger, M.D. (Dr. Jaeger) had performed a rotator cuff repair. Dr. Cash's examination of Claimant again produced diffuse complaints of pain with any maneuvers, yet Claimant exhibited full range of motion with no weakness, no inflammation and no evidence of difficulties with the carpal tunnels. Dr. Cash found no objective basis for Claimant's complaints and opined that there was nothing in the examination to support her complaints. He again opined that Claimant had fully recovered from her work injury and that her shoulder problems were not related to her original work injury.

4

At a deposition conducted on July 9, 2004, Claimant testified that she worked for Employer as an LPN beginning on May 8, 1989. In August 2001, she began to experience pain in her right wrist and forearm, causing her to stay out of work until February 2002. Claimant testified that her benefits were reinstated when she had surgery on her right arm that same month, and she was then out of work until June 2002. She testified that she returned to work in Employer's laboratory filing papers and slides, and she continued in this light-duty work until she was laid off in November 2002.

Claimant testified that she began to treat with Dr. Sweet at the Philadelphia Hand Center, and admitted that Dr. Sweet told her that she was able to return to work in full-duty capacity as of June 3, 2002. Claimant testified that she tried to return to full-duty work at that time but was told by Employer's nurse manager, Ms. Colin Anderson, that there was no full-duty position available. Claimant admitted that she had not applied for a job anywhere else or sought retraining.

At a hearing before WCJ Snyder on December 22, 2009, Claimant stated that she continued to have pain and discomfort in her right elbow and her fingers were sometimes blue and cold. Claimant rated her level of pain on a good day as a three or four and on a bad day as a ten. She testified that she has difficulty bathing and brushing her teeth, trouble lifting her arms at times, and relies on her husband and children to perform the activities of daily life. She further testified that she did not feel capable of returning to any type of work.

Dr. Jaeger, a board-certified orthopedic surgeon, also testified on Claimant's behalf. He testified that he began treating Claimant on March 16, 2005. At that time, he diagnosed her with brachial plexopathy, cubital tunnel syndrome - right greater than left - and a neuroma of the dorsal sensory branch of the radial nerve at the right wrist, and recommended therapy. Dr. Jaeger testified that on October 14, 2005, he performed a right cubital tunnel release and a resection of the right superficial radial nerve. He stated that he performed this surgical procedure to correct a complication from Claimant's first surgery performed by Dr. Sweet. On May 29, 2008, Dr. Jaeger performed right shoulder surgery on Claimant. Dr. Jaeger asserted that these two surgeries were connected to Claimant's physical therapy after the initial surgery that had caused a material exacerbation of Claimant's injuries. Dr. Jaeger further testified that DeQuervain's surgery is frequently complicated by radial nerve involvement and that Claimant's radial nerve injury caused changes that led to her cubital tunnel syndrome and brachial plexopathy. He testified that an EMG conducted in August 2008 showed residual cubital syndrome.

Dr. Jaeger concluded that Claimant was much better, that she had recovered from her right shoulder condition with full range of motion, and that he observed no signs of atrophy in either arm the last time he saw Claimant. He testified that she could return to light-duty work and suggested sedentary, nonrepetitive work in a temperature-controlled environment greater than 60 degrees, with Claimant lifting no more than five pounds. Dr. Jaeger agreed that Claimant could return to work eight hours a day, five days a week with these restrictions.

In January 2012, WCJ Snyder retired and the petitions were reassigned to WCJ Joseph Hagan (WCJ Hagan) for decision. After reviewing all of the evidence, WCJ Hagan, by decision and order dated July 30, 2012, granted Employer's termination petition and dismissed Claimant's penalty petition. He found that Claimant was not credible primarily because her testimony in both 2004 and 2009 that she could not work was contradicted by that of her medical expert, Dr. Jaeger, who opined that she was able to return to light-duty work full time, that her shoulder was better, and that she was doing very well. WCJ Hagan also noted that except for Dr. Jaeger's conclusions, his testimony could support a full recovery.

WCJ Hagan further found Dr. Cash's testimony to be more credible than that of Dr. Jaeger because Dr. Cash relied almost exclusively on objective measures of Claimant's condition rather than her subjective complaints. Moreover, these objective measures were not contradicted by Dr. Jaeger's factual testimony, which provided no objective reasons to support Claimant's continued complaints.

Based on all of the above, WCJ Hagan found that Employer met its burden of proving that Claimant had fully recovered from her work injuries by the date of Dr. Cash's second IME, July 8, 2008, and that she was able to return to work without restriction. WCJ Hagan further found that Claimant failed to prove that Employer violated any portion of the Act given that she freely signed the supplemental agreement which called for a suspension of benefits and her benefits were later reinstated pursuant to the parties' stipulation. Moreover, Employer

proved that it presented a reasonable contest in all of the petitions, given the fact that it prevailed. Therefore, WCJ Hagan granted Employer's termination petition and dismissed Claimant's penalty petition.[2]

## III.

Claimant appealed[3] to the Board arguing that Dr. Cash's testimony was incompetent and insufficient to support a termination of benefits. She further argued that WCJ Hagan erred in denying her penalty petition because she established that she did not return to work at wages equal to or greater than her pre-injury wage and that Employer failed to reinstate her benefits.

The Board affirmed the WCJ's decision that Employer had met its burden because WCJ Hagan accepted Dr. Cash's opinion that she had fully recovered from her work-related injury. The Board noted that Dr. Cash recognized Claimant's diagnoses as rendered by her treating physician, Dr. Jaeger, and opined that he could not find any objective evidence to support Claimant's continued subjective complaints. The Board further noted that Dr. Cash's purported failure

---

[2] WCJ Hagan also dismissed as moot two petitions for physical examination filed by Employer. These petitions are not at issue on appeal and, therefore, will not be addressed.

[3] In an opinion dated September 27, 2013, the Board did not reach the merits of the petitions, but remanded the matter because Dr. Cash's deposition was missing from the record. On April 6, 2015, WCJ Hagan issued a decision indicating that Dr. Cash's deposition had been uploaded and the record was complete. However, the deposition was not properly uploaded and the Board had not retained paper copies of the record. The matter remained in limbo until August 9, 2017, when WCJ Hagan issued a second decision and order explaining what had transpired, indicating that the deposition and full record had been properly transmitted to the Board and the remand had now been complied with. Claimant then appealed from this decision.

to address certain studies or perform certain tests went not to the competency but the weight to be afforded his testimony, a matter wholly entrusted to the WCJ.

As for the penalty petition, the Board affirmed the WCJ's decision that there was no violation of the Act because Claimant returned to work in June 2002 and she signed a supplemental agreement at that time agreeing to the suspension of benefits. While Claimant was subsequently laid off in November 2002, her benefits were reinstated through the parties' subsequent stipulation. This appeal followed.[4]

## IV.

## A.

On appeal, Claimant argues that Employer did not meet its burden because Dr. Cash's testimony is not competent. It is well established that

> [c]ompetency when applied to medical evidence[] is merely a question of whether the witnesses' [sic] opinion is sufficiently definite and unequivocal to render it admissible. We have often observed that medical evidence is unequivocal as long as the medical expert, after providing a foundation, testifies that in his

---

[4] In a workers' compensation proceeding, this Court's scope of review is limited to determining whether errors of law were committed, whether constitutional rights were violated, and whether necessary findings of fact are supported by substantial evidence. *Roundtree v. Workers' Compensation Appeal Board (City of Philadelphia)*, 116 A.3d 140, 143 n.4 (Pa. Cmwlth. 2015). Substantial evidence has been defined as "such relevant evidence as a reasonable person might accept as adequate to support a conclusion. . . . In performing a substantial evidence analysis, this [C]ourt must view the evidence in a light most favorable to the party who prevailed before the factfinder." *Waldemeer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003) (citation omitted).

9

professional opinion he believes or thinks the facts exist. Even if the witness admits to uncertainty, reservation, doubt or lack of information with respect to scientific or medical details, as long as the witness does not recant the opinion first expressed, the evidence [is] unequivocal.

*Cerro Metal Products Company v. Workers' Compensation Appeal Board (PLEWA)*, 855 A.2d 932, 937 (Pa. Cmwlth. 2004) (quotations and citations omitted).

Claimant first contends that Dr. Cash's testimony is incompetent because he did not specifically state that she had fully recovered from her initially accepted injury of a right thumb and forearm strain. Claimant appears to be arguing that Dr. Cash rejected or did not accept the description of her work-related injuries. Within the context of a termination petition:

An employer seeking to terminate a claimant's benefits must prove that the claimant's disability has ceased or that any existing injury is not a result of the work-related injury. *Jaskiewicz v. Workmen's Compensation Appeal Board (James D. Morrisey, Inc.)*, 651 A.2d 623 (Pa. Cmwlth. 1994), *petition for allowance of appeal denied*, [] 661 A.2d 875 (Pa. 1995). An employer may satisfy this burden by presenting unequivocal and competent medical evidence of a claimant's full recovery from the work-related injury. *Koszowski v. Workmen's Compensation Appeal Board (Greyhound Lines, Inc.)*, [] 595 A.2d 697 ([Pa. Cmwlth.] 1991).

*To v. Workers' Compensation Appeal Board (Insaco, Inc.)*, 819 A.2d 1222, 1224 (Pa. Cmwlth. 2003).

In his testimony, Dr. Cash did not reject or expressly refuse to recognize Claimant's accepted work-related injury. Instead, Dr. Cash testified that his physical examination of Claimant suggested "gross symptom exaggeration and nonphysiological complaints and findings that did not fit with her physical exam." (Reproduced Record (R.R.) at 101a.) He testified that he found "no convincing evidence of any residual upper extremity problems as a result of the work injury in question." (*Id.*) Claimant's right thumb and forearm strain would necessarily fall within the definition of an upper extremity problem.

Moreover, the following exchange with Employer's counsel took place:

> Q. Now, Doctor, based on your exam, did you arrive at an opinion within a reasonable degree of medical certainty as to whether [Claimant] was fully recovered from the following diagnosis: The DeQuervain's [S]yndrome you mentioned as well as right brachial plexopathy, bilateral cubital tunnel syndrome, left neuroma of the dorsal sensory branch of the radial nerve at the right wrist?
>
> A. I couldn't find anything on her exam to support those findings.
>
> Q. So she's fully recovered from that set of problems?
>
> A. Yes.

(R.R. at 101a-102a.) Dr. Cash did not testify that Claimant never had these work injuries, but rather testified that she had fully recovered from them at the time of her IME.

11

Next, Claimant contends that Dr. Cash's testimony is not competent because he did not know about Claimant's additional accepted injuries as outlined in the parties' stipulation until the day of his deposition. In the deposition, Employer's counsel read to Dr. Cash the accepted description of Claimant's work injury verbatim. In response, Dr. Cash unequivocally testified that he believed that she had fully recovered from all of the injuries and did not need any further treatment. (R.R. at 109a.) He went on to testify that there were no objective findings to support Claimant's ongoing complaints and opined that there was no connection between her current complaints and her work injury. While this statement may go to the weight given to his testimony, it does not go to his competency. *See Marriott Corporation v. Workers' Compensation Appeal Board (Knechtel)*, 837 A.2d 623, 631 n.10 (Pa. Cmwlth. 2003) ("the fact that a medical expert does not have all of a claimant's medical records goes to the weight given the expert's testimony, not its competency") (citation omitted).

Finally, Claimant contends that Dr. Cash's opinion is not competent because he was unaware of an EMG/NCV [nerve conduction velocity] study performed a month after his second examination of Claimant, which purportedly demonstrated ongoing right carpal tunnel syndrome, right brachial plexopathy, very borderline left brachial plexopathy, bilateral C6-7 radiculopathy, and mild residual ulnar neuropathy at the cubital tunnel on the right. Claimant also contends that Dr. Cash failed to perform a Finkelstein test, which is the test for DeQuervain's Syndrome, one of Claimant's accepted injuries. Again, this goes to the weight of the testimony, not its competency. *Id.*

12

As we have stated over and over again, "[t]he WCJ, as the ultimate fact-finder in workers' compensation cases, 'has exclusive province over questions of credibility and evidentiary weight.'" *A & J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi),* 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013) (quoting *Anderson v. Workers' Compensation Appeal Board (Penn Center for Rehab)*, 15 A.3d 944, 949 (Pa. Cmwlth. 2010)). That is so, even where the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made. *A & J Builders, Inc.*, 78 A.3d at 1238.

Dr. Cash testified that Claimant had fully recovered from her work-related injuries, that she could return to her pre-injury job without restriction and that he had no objective medical findings to substantiate her continued complaints of pain. WCJ Hagan accepted the testimony and opinions of Dr. Cash as credible, explaining that Dr. Cash's opinions were based upon objective measures rather than Claimant's subjective complaints. There is ample evidence in the record to support WCJ Hagan's finding that Claimant had fully recovered from her work injury, and we discern no error in the granting of Employer's termination petition.[5]

---

[5] Claimant cites to our Supreme Court's decision in *Lewis v. Workers' Compensation Appeal Board (Giles & Ransome, Inc.)*, 919 A.2d 922 (Pa. 2007), and argues that WCJ Hagan erred in granting the termination petition because Employer failed to prove a change in Claimant's physical condition. Claimant argues that because the October 18, 2007 order adopting the parties' stipulation acknowledged an expanded definition of her work injuries, Employer was required to prove a change in condition. However, *Lewis* is distinguishable as the employer in that case was on its fourth petition to terminate benefits, and its medical expert opined that the claimant's knee injury was caused by a degenerative condition and was completely non-work-related. Moreover, the parties here specifically agreed through their stipulation that Employer would reinstate benefits without prejudice to Employer's right to continue to pursue a termination petition. (R.R. at 79a.)

**B.**

Claimant also argues that pursuant to Section 440 of the Act, added by the Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. § 996, she is entitled to an award of counsel fees because Employer engaged in an unreasonable contest. Curiously, she does not base this argument on the present litigation, but claims that she is entitled to counsel fees because she was successful on her previous review and reinstatement petitions and in defense of the first termination petition, as evidenced by WCJ Snyder's October 18, 2007 decision adopting the parties' stipulation and retroactively reinstating her benefits. Claimant fails to appreciate that this previous litigation and the prior decision are not presently before the Court for review. As Employer presented a reasonable contest in the present matters, as it was ultimately successful, Claimant is not entitled to counsel fees.

Claimant also argues that WCJ Hagan erred in denying her penalty petition because Employer violated the Act by filing a materially inaccurate notice of suspension in 2002. Again, any issues regarding Employer's 2002 filing of the notice of suspension were or should have been addressed through the previous litigation and stipulation, pursuant to which Claimant received any outstanding benefits she was due. Moreover, we note that Claimant agreed to the suspension as she signed the supplemental agreement.

Accordingly, the order of the Board is affirmed.

_____
DAN PELLEGRINI, Senior Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lizette Banks,                                    :
        Petitioner                :
                                               :
        v.                        : No. 1721 C.D. 2017
                                               :
Workers' Compensation Appeal                      :
Board (Albert Einstein Medical                    :
Center),                                          :
        Respondent              :

# **O R D E R**

AND NOW, this 18th day of July, 2018, the order of the Workers' Compensation Appeal Board dated October 23, 2017, at No. A12-1185, is hereby affirmed.

_____
DAN PELLEGRINI, Senior Judge