# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ramon del Rosario-Reyes,     :
                       :
            Petitioner    :
                       :
        v.               : No. 1361 C.D. 2019
                       : Submitted: June 26, 2020
Workers' Compensation Appeal    :
Board (Prizer Painter Stove        :
Works),                       :
                       :
           Respondent :

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge[1]
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                      FILED: July 13, 2021

      Ramon del Rosario-Reyes (Claimant), proceeding *pro se*, petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed a decision of the Workers' Compensation Judge (WCJ) denying and dismissing Claimant's claim and penalty petitions.[2] Claimant contends that the WCJ's decision is not supported by substantial evidence. Discerning no error, we affirm.

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Brobson became President Judge.

[2] Claimant was represented by counsel during the claim proceedings before the WCJ and the Board.

## I. Background

On March 28, 2017, Claimant filed a claim petition alleging that, on June 1, 2016, he "sustained a right shoulder injury as a result of the repetitive use of a drill while working" as an assembler for Prizer Painter Stove Works (Employer). Certified Record (C.R.) at 7.[3] Claimant sought temporary partial disability benefits from September 15, 2016, and ongoing, as well as the payment of medical bills and unreasonable contest fees. C.R. at 8. On April 28, 2017, Claimant filed a penalty petition alleging that Employer failed to fully investigate his claim, failed to timely issue appropriate acknowledgement or denial documents, and misused Bureau of Workers' Compensation documents. C.R. at 20. Employer filed timely answers denying all material allegations. C.R. at 14-17, 26-27.

The petitions were consolidated and assigned to a WCJ, who held evidentiary hearings. Claimant testified by deposition and in person and presented evidence in support of his claim, including the deposition testimony of his medical expert. In opposition, Employer presented the deposition testimony of its own lay and medical witnesses. The WCJ summarized the evidence presented and made the following relevant findings.

By deposition held in July 2017, Claimant testified[4] that he worked as an assembler for Employer, which is a stove manufacturer. Claimant worked full-time hours and typically worked an additional 10 hours of overtime at time-and-a-half wages. Claimant used a domestic, not an industrial-strength, drill to make holes in stove metal to insert screws. According to Claimant, the drill was not powerful

---

[3] Because the Certified Record was filed electronically and was not paginated, the page numbers referenced in this opinion reflect electronic pagination.

[4] Claimant testified and participated with the aid of an interpreter throughout the proceedings.

enough, and he needed to use excessive force to drill the holes. On June 1, 2016, Claimant developed pain in his right shoulder and biceps while working, and he experienced a sensation of palpitations. Claimant sought treatment that day and was examined at the emergency room at Saint Joseph's Hospital. Thereafter, Claimant continued to work and experience pain. In mid-September 2016, Claimant reported the injury to Employer's human resources supervisor, Elaina Kohler (Human Resources), and he attributed the pain to his work. Human Resources referred Claimant to the panel physicians at WorkNet. There, Claimant was first evaluated by Robert Dellinger, M.D. (Dr. Dellinger) and then treated with Jonathan Dreazen, M.D. (Dr. Dreazen) for four months. While under WorkNet's care, Claimant underwent magnetic resonance imaging (MRI) in September 2016 and January 2017, and electromyography (EMG) in January 2017. After the second MRI, Dr. Dreazen referred Claimant to Paul Neuman, D.O. (Claimant's Physician), who saw Claimant on January 25, 2017. Claimant's Physician recommended surgery, but never performed the surgery because Claimant's insurance carrier did not approve it. Claimant continued working for Employer, including some overtime, but he worked fewer overtime hours because of his arm difficulties and continuing pain. Claimant went to physical therapy for his arm three times per week. He had no prior arm injuries. WCJ's Opinion, 11/02/2018, Finding of Fact (F.F.) Nos. 4(a)-(c), 14.

On cross-examination, Claimant testified that he told his supervisor, Miles Buchanan (Supervisor), about his problems the same day that he informed Human Resources in September 2016. Claimant relayed to his Supervisor that he believed his arm pain was caused by the type of drill he was using. Despite reporting his problem, Employer did not change the type of drill. Claimant continued performing his regular job duties using the same drill. F.F. No. 5.

3

At an April 2018 hearing before the WCJ, Claimant testified in person that he began using the domestic-type drill in 2015 and experienced problems a year later. On June 1, 2016, while he was putting a screw through the back of a stove, the drill caught and turned backward, twisting his right wrist. He felt a pull in his wrist, not in his arm. After this incident, Claimant testified that his productivity declined and his pain continued. Claimant's chiropractor, Thomas Canseco, D.C., of Delaware Valley Chiropractic & Rehabilitation (Chiropractor), removed Claimant from work between October 10 and November 11, 2017. Upon Claimant's return, Employer assigned Claimant a different job of cutting insulation, which he was able to do with his left arm. Claimant stopped working effective March 18, 2018, because of decreased productivity and Employer no longer needed him to cut insulation. F.F. No. 6(a)-(b).

On cross-examination, Claimant acknowledged that the mechanism of injury alleged on his claim petition was his repetitive use of a drill, not a specific incident occurring on June 1, 2016. He also acknowledged that the form he completed on September 26, 2016, when he underwent the first MRI, also described that the mechanism of injury was the repetitive use of an underpowered drill requiring him to exert extra force. This mechanism of injury was consistent with his prior deposition testimony. In addition, Claimant's counsel conceded that there was no record of a June 1, 2016 hospital visit. Claimant testified that he had pain in both biceps and his right shoulder, but he continued working and was not treated again until September 2016, when Employer referred him to WorkNet for medical care. F.F. No. 7.

Claimant also presented the deposition testimony of Claimant's Physician, a board-certified orthopedic surgeon, who saw Claimant in January 2017.

4

Claimant's Physician testified that Claimant gave him a history that he injured his right arm while using a drill overhead when it twisted his arm. His physical examination of Claimant revealed an abnormal right upper extremity contour, consistent with a long bicipital tendon rupture. Claimant's Physician reviewed the January 2017 MRI, which showed a tear of the long head of the biceps, a vertical partial thickness tear of the joint surface of the distal supraspinatus tendon, and glenohumeral joint effusion, consistent with osteoarthritis. Based upon the history, physical examination, and review of the January 2017 MRI, Claimant's Physician diagnosed Claimant with a long head biceps tendon rupture and a partial rotator cuff tear, which he believed was due to Claimant's use of the drill in an overhead fashion when it torqued, as Claimant described to him. He recommended arthroscopic surgery to determine the extent of the tear and the rupture. F.F. No. 11(a)-(d).

On cross-examination, Claimant's Physician testified that it was his understanding that Claimant was working overhead using a drill, that the drill twisted or torqued, and that he suffered acute pain as a result. He testified that, while repetitive overhead work could cause chronic problems, Claimant's biceps tear was an acute injury as shown by the January 2017 MRI. Claimant's Physician did not review the September 2016 MRI or other medical records, until his deposition. Upon reviewing the September 2016 MRI, he noted that it indicated a normal examination with no tears and no right shoulder problems. Claimant's Physician based his causation opinion on the accuracy of Claimant's history as provided to him. He conceded that he was not concerned with causation but with diagnosis and treatment of Claimant.

Claimant also offered medical records from Todd Schwartz, D.O., of Pennsylvania Orthopedic Associates (Dr. Schwartz), and notes from Claimant's

5

Chiropractor, which reflect a history of injury occurring from repetitive drill use, when Claimant suffered sudden pain in his right arm, increasing toward the front of his right biceps.[5]  F.F. No. 13.  Claimant also offered the medical records of the WorkNet panel physicians, Drs. Dellinger and Dreazen.  These records indicate that Claimant first treated with Dr. Dellinger on September 15, 2016, at which time he gave a history of right arm pain for the prior two to three months, which increased with his use of a drill.  Claimant was seen again on September 29, 2016, by Dr. Dreazen, and provided a history that he was injured when a drill bit got stuck, causing the drill to rotate backward.  The September 2016 MRI showed no abnormal pathology and showed an intact long head of the biceps tendon.  Claimant reported improvement in his arm pain at his October 6, 2016 visit, but on October 13, 2016, he considered himself minimally improved.  Dr. Dreazen released Claimant to continue physical therapy in the short term and referred him to an orthopedic specialist for further assessment.  Claimant saw Dr. Dreazen again on December 14, 2016, at which time Dr. Dreazen diagnosed Claimant with pain syndrome involving the right biceps area with an uncertain etiology and referred him for an EMG and a second MRI.  The January 2017 EMG was unremarkable for neurogenic pathology.  The January 2017 MRI showed a long head biceps tendon tear, among other things.  As a result, Dr. Dreazen referred Claimant to Claimant's Physician for treatment.  F.F. No. 14.

In opposition, Employer offered the testimony of Claimant's Supervisor, who supervised Claimant during the period in question.  Supervisor had personally performed every job that he supervised.  Supervisor described the stove

---

[5] The WCJ sustained Employer's hearsay objections to the records of non-testifying witnesses but admitted them insofar as the records contained Claimant's history given at each examination.  F.F. No. 13.

assembly process. Supervisor had used the same type of drill when he performed the assembler position and he did not have to use extra force. Claimant's assembler job entailed working at chest level, waist level, or ankle level. If at ankle level, Claimant would be sitting in a chair. However, the job never required Claimant to work overhead. In June 2016, Claimant did not request a different drill or notify Supervisor that he was having difficulty drilling holes. Claimant never reported an injury to Supervisor, called out sick between June 2016 and September 2016, complained about pain, or requested medical treatment or accommodations for his right arm or shoulder. Supervisor first learned that Claimant reported a work injury in September 2016 to Human Resources. F.F. No. 18(a)-(g).

Employer also offered the deposition of Sanjiv Naidu, M.D., a board-certified orthopedic surgeon (Employer's Expert). In March 2017, Employer's Expert examined Claimant, took a history from Claimant, and reviewed his medical records. Claimant's current primary complaint was pain at the "biceps belly," or mid-arm. F.F. No. 20(a). Employer's Expert testified that Claimant relayed that he used a drill for work, which required force to use, and, as he pushed, he felt a twist, causing pain in his right shoulder and the area of the proximal humerus. Employer's Expert opined that the mechanism of injury, as described to him, using force and feeling a torque or twist, could cause the biceps to rupture. However, the alternate mechanism of injury provided – using a drill repetitively on a daily basis – would not cause such a rupture. He explained that the repetitive nature of drilling or any other repetitive work would not cause attenuation of the tendon. Without a twisting or torqueing event, Claimant could not have sustained a biceps tendon tear from repetitive work with a drill. F.F. No. 20(a)-(h).

7

Employer's Expert also reviewed Claimant's diagnostic tests and noted that the September 2016 MRI and January 2017 EMG were normal, whereas the January 2017 MRI showed a proximal biceps rupture and glenohumeral joint arthritis. He disagreed with Claimant's Physician's rotator cuff tear diagnosis and surgery recommendation, opining that Claimant's bilateral shoulder ranges were full and that there was no evidence of a rotator cuff tear, impingement, or instability. Employer's Expert described how a biceps rupture occurs and opined that it is generally due to age-related degeneration. A proximal biceps rupture leaves an obvious deformity, but within six to eight weeks, everything resolves, meaning that, when the biceps initially retracts, it will spasm for perhaps three to four weeks, and then resolve without residual effects within the next six to eight weeks. Although Claimant had an obvious "Popeye" deformity, there was no loss of strength or range of motion or other functional limitation. Employer's Expert opined that "[s]urgery is worse than doing nothing." F.F. No. 20(e). He testified that treatment is essentially over-the-counter anti-inflammatories as needed. Recovery takes approximately three months. As of his examination, Claimant was completely functional and intact, and he did not require any work restrictions. F.F. Nos. 20(d)-(h), 21.

Ultimately, the WCJ found that Claimant's testimony was not credible regarding the occurrence of an alleged work injury on June 1, 2016, based on numerous inconsistencies. The WCJ explained that Claimant claimed and initially testified that he sustained a repetitive motion injury on June 1, 2016, which he did not report until September 2016, and during that time Claimant continued to perform his normal job duties. At his two first medical examinations, Claimant relayed that the mechanism of injury was the repetitive use of a drill. Claimant did not mention

8

an alleged twisting or torqueing event until his final testimony, which occurred after the medical witnesses had testified. Claimant also testified that his wrist, not his upper arm, was twisted by the drill's reversal. Further, Claimant's September 2016 MRI was normal. Claimant was treated in October 2016, and was again released to his regular job and did not treat again for two months. F.F. No. 22.

The WCJ credited Supervisor's testimony that Claimant continued to work without complaint after the alleged June 1, 2016 injury. F.F. No. 23. The WCJ found the testimony of Claimant's Physician competent, but not credible, because it was based upon a misunderstanding of the mechanism of injury and his reliance on Claimant's less-than-credible reporting. The WCJ found Employer's Expert competent and credible. The WCJ explained that, although both doctors agreed regarding the biceps diagnosis, the cause of it was not satisfactorily proven based on inconsistences in Claimant's history, as noted throughout the findings. The WCJ noted that Employer's Expert's testimony was based upon a thorough clinical examination and review of all diagnostic studies. Employer's Expert provided a detailed explanation as to why Claimant did not suffer a work-related shoulder injury and why he could have only suffered the biceps injury due to a twisting motion, which Claimant did not credibly establish as having occurred on June 1, 2016, or on any other date. Where the opinions of Claimant's Physician and Employer's Expert diverged, the WCJ credited Employer's Expert. F.F. No. 25.

Critically, the WCJ found that, although Claimant may have sustained a proximal long head biceps tendon rupture, he did not establish that the injury occurred in the course and scope of his employment. Claimant did not establish that he suffered a work-related, right shoulder partial rotator cuff tear on June 1, 2016. F.F. No. 26.

9

Based on the testimony and evidence provided, the WCJ determined that Claimant failed to establish any work-related injury on June 1, 2016, or that Employer violated the Workers' Compensation Act (Act).[6] By decision and order circulated on November 2, 2018, the WCJ denied and dismissed Claimant's claim and penalty petitions. From this decision, Claimant appealed to the Board, which affirmed. Claimant now petitions this Court for review.[7]

## II. Issues

On appeal, Claimant argues that the WCJ's decision that Claimant did not meet his burden of proving that he sustained a work-related injury is not supported by substantial evidence. Claimant asserts that the WCJ capriciously disregarded his evidence while relying on Employer's evidence.

## III. Discussion

A review for capricious disregard of material, competent evidence is an appropriate component of appellate review in any case in which the question is properly raised before a court. *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002). A capricious disregard of evidence occurs where "the WCJ's findings reflect a deliberate disregard of competent evidence that logically could not have been avoided in reaching the decision . . . ." *Pryor v. Workers' Compensation Appeal Board (Colin Service Systems)*, 923 A.2d 1197, 1205 (Pa. Cmwlth. 2007). Where substantial evidence

---

[6] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4; 2501-2710.

[7] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Department of Transportation v. Workers' Compensation Appeal Board (Clippinger)*, 38 A.3d 1037, 1042 n.3 (Pa. Cmwlth. 2011).

supports the findings, and those findings in turn support the conclusions, it should remain a rare instance where an appellate court disturbs an adjudication based on capricious disregard. *Wintermyer*, 812 A.2d at 491-92.

In a claim proceeding, a claimant bears the burden of proving that he suffered an injury in the course and scope of his employment causing a loss of earning power. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993); *Morrison v. Workers' Compensation Appeal Board (Rothman Institute)*, 15 A.3d 93, 97-98 (Pa. Cmwlth. 2010). Where the causal connection between the work incident and alleged disability is not obvious, unequivocal medical evidence is necessary to establish it. *Lynch v. Workmen's Compensation Appeal Board (Teledyne Vasco),* 680 A.2d 847, 849 (Pa. 1996); *Justus v. Workers' Compensation Appeal Board (Bay Valley Foods)*, 147 A.3d 1237, 1241 (Pa. Cmwlth. 2016).

The WCJ, as the ultimate fact-finder in workers' compensation cases, "has exclusive province over questions of credibility and evidentiary weight . . . ." *A & J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi)*, 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013) (quoting *Anderson v. Workers' Compensation Appeal Board (Penn Center for Rehab)*, 15 A.3d 944, 949 (Pa. Cmwlth. 2010)). The WCJ's authority over questions of credibility, conflicting evidence, and evidentiary weight is unquestioned. *Id.* The WCJ may accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Id.* We are bound by the WCJ's credibility determinations. *Id.*

Moreover, "it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *A & J Builders*, 78 A.3d at

11

1238 (quoting *Minicozzi v. Workers' Compensation Appeal Board (Industrial Metal Plating Inc.)*, 873 A.2d 25, 29 (Pa. Cmwlth. 2005)).  We examine the entire record to see if it contains evidence that a reasonable person might find sufficient to support the WCJ's findings.  *Id.*  If the record contains such evidence, the findings must be upheld, even though the record may contain conflicting evidence.  *Id.*  Additionally, we must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence.  *Id.* (citing *Wagner v. Workers' Compensation Appeal Board (Anthony Wagner Auto Repairs & Sales, Inc.)*, 45 A.3d 461 (Pa. Cmwlth. 2012)).

Further, to satisfy the reasoned decision requirements of Section 422(a) of the Act, 77 P.S. §834, a WCJ must set forth the rationale for the decision by specifying the evidence relied upon and reasons for accepting it.  *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1047 (Pa. 2003); *A & J Builders*, 78 A.3d at 1243.  "Where medical experts testify by deposition, a WCJ's resolution of conflicting evidence must be supported by more than a statement that one expert is deemed more credible than another."  *A & J Builders*, 78 A.3d at 1243 (quoting *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Co.)*, 893 A.2d 191, 194 (Pa. Cmwlth. 2006)).  To allow effective appellate review, the WCJ must articulate an objective basis for the credibility determination.  *Id.*

Here, in accordance with the reasoned decision requirements of Section 422(a) of the Act, the WCJ reviewed the evidence presented by both parties and issued a 19-page opinion, wherein he summarized the evidence and made all necessary credibility findings.  Contrary to Claimant's assertions, the WCJ did not overlook or capriciously disregard his medical evidence in determining that Claimant did not meet

12

his burden of proof. The WCJ fully considered Claimant's medical evidence but rejected Claimant's Physician's causation opinion because it was based on the history and mechanism of injury provided by Claimant, which the WCJ rejected as not credible. The WCJ detailed numerous inconsistencies in Claimant's testimony and evidence regarding the mechanism and timing of the injury.

For starters, on the claim petition, Claimant stated that, on June 1, 2016, he "sustained a right shoulder injury as a result of the repetitive use of a drill while working." C.R. at 7, 687. During Claimant's July 2017 deposition, Claimant testified that the mechanism of injury was caused by repetitive use of an inadequate drill. C.R. at 262, 282.

However, at a subsequent hearing in April 2018, after both medical experts were deposed, Claimant testified regarding a specific traumatic event occurring on June 1, 2016. C.R. at 183-84. He testified that, when he was putting a screw through the back part of the stove, the drill "turned on him," "twisted" and "torqued." C.R. at 184. The drill "turned to the left, and it turned [his] wrist to a certain degree." C.R. at 184. At that moment, he felt a "pull" in his right wrist, but he did not feel anything in his arm. C.R. at 184-85.

Claimant also reported differing mechanisms of injury to various medical providers. The medical reports of Drs. Schwartz and Dellinger indicate a history of injury caused by repetitive use of an underpowered drill. C.R. at 446, 830, 915, 926. The September 2016 MRI intake form completed by Claimant reported repeated use of a handheld drill as the mechanism of injury. C.R. at 806.

According to Dr. Dreazen's notes, Claimant provided a history that he was injured when a drill bit became stuck and the drill rotated, causing the injury. C.R. at 912. Claimant's Physician testified that the history he obtained from

13

Claimant was that he was "using a drill . . . overhead and it twisted his arm." C.R. at 301, 816. Employer's Expert similarly understood that Claimant sustained a "twisting injury at work[,] which caused the biceps rupture." C.R. at 535-37.

In addition, Claimant consistently maintained a June 1, 2016 date of injury. Although the January 2017 MRI showed a tear of the long head of the biceps, the September 2016 MRI showed no abnormal pathology, including an intact long head of the biceps tendon. C.R. at 912, 914. After the alleged onset of injury, Claimant continued to work without interruption, and he did not report an injury until September 2016. Although both Claimant's Physician and Employer's Expert agreed that Claimant sustained a biceps rupture based on the January 2017 MRI, there was no credible or competent evidence connecting Claimant's injury to a work-related cause.

Upon review, the WCJ carefully considered and weighed the evidence before him, made all necessary findings and conclusions, and clearly articulated his reasons for accepting and rejecting the testimony. The WCJ's rejection of Claimant's evidence in favor of Employer's evidence does not constitute a capricious disregard of the evidence. *See Grimm on Behalf of Grimm v. Workers' Compensation Appeal Board (Federal Express Corp.)*, 176 A.3d 1045, 1054 (Pa. Cmwlth.), *appeal denied*, 189 A.3d 385 (Pa. 2018) (a WCJ's express consideration and rejection of evidence does not constitute a capricious disregard of that evidence).

Claimant bore the burden of proving all elements necessary to support an award, including the existence of a work-related injury. *Inglis House*, 634 A.2d at 595. Because the WCJ rejected Claimant's testimony regarding the very occurrence of a work injury, Claimant could not meet his burden of proof. Insofar as Claimant argues that the WCJ should have credited his evidence over Employer's,

14

this Court may not reconsider the WCJ's determinations on matters of credibility and evidentiary weight. *Minicozzi*, 873 A.2d at 29.

Upon review, substantial evidence supports the WCJ's findings of fact and the conclusion of law that Claimant did not meet his burden of proving a work-related injury. Thus, we discern no error in the WCJ's denial of Claimant's claim and penalty petitions.

## IV. Conclusion

Accordingly, we affirm the Board's order.

_____
MICHAEL H. WOJCIK, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ramon del Rosario-Reyes,      :
     :
     Petitioner      :
     :
     v.      :   No. 1361 C.D. 2019
     :
Workers' Compensation Appeal      :
Board (Prizer Painter Stove      :
Works),      :
     :
     Respondent   :

## **O R D E R**

AND NOW, this 13th day of July, 2021, the order of the Workers' Compensation Appeal Board, dated August 28, 2019, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge